**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Creed Miles EVANS,
Defendant–Appellant.**

No. 89–30188.

United States Court of Appeals,
Ninth Circuit.

Argued April 12, 1990.
Submission Deferred April 17, 1990.
Submitted April 19, 1990.
Decided March 20, 1991.

Michael W. Cotter, Cotter & Cotter, Great Falls, Mont., for defendant-appellant.

Robert J. Brooks, Asst. U.S. Atty., Butte, Mont., and Larry L. Nickell, Sp. Asst. U.S. Atty., Bureau of Alcohol, Tobacco & Firearms, San Francisco, Cal., for plaintiff-appellee.

Before WALLACE, HALL and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Creed M. Evans appeals from his conviction following a plea of *nolo contendere* for making false statements to the Bureau of Alcohol, Tobacco and Firearms in violation of 18 U.S.C. § 1001 (1988). Evans claims that the district court improperly denied his motions to dismiss prior charges and suppress evidence relating to those charges—charges which the government subsequently dropped in exchange for his plea of *nolo contendere* on the false statements charge. We affirm.

## BACKGROUND

Evans was originally indicted, along with three others, on charges of (1) conspiracy to cause illegal possession of machine guns, and (2) aiding and abetting the unlawful possession of machine guns. The government alleged that Evans and codefendant Burns jointly agreed to sell and sold to any paying customer all the parts necessary to assemble machine guns which, prior to May 19, 1986, private persons could not legally possess without registering, 26 U.S.C. § 5861(d) (1982), and after May 19, 1986, private persons could not legally possess at all, 18 U.S.C. § 922(*o*) (1988). According to the charge, Evans obtained, for Burns to sell, kits consisting of all component parts of Sten MKII submachine guns except receiver tubes. Evans sold customers blank receiver tubes along with step-by-step instructions (includ-

ing drawings and receiver tube templates) for making the receiver tubes function and assembling them, with the component parts kits, into functioning Sten MKII submachine guns. Evans and Burns then referred their customers to each other.

■ After the district court denied Evans' motions to dismiss the charges against him and suppress evidence, Evans entered into a plea agreement with the government, whereby he would plead *nolo contendere* to a superseding information charging him with making false statements to the Bureau of Alcohol, Tobacco and Firearms, but he reserved his right to appeal the district court's denial of his previous motions and to withdraw his plea if that appeal proved successful. Pursuant to that understanding, he pled guilty to the false statements charge and the indictment relating to the machine gun offense was dismissed.[1]

## DISCUSSION

All the issues in this case are legal questions subject to de novo review, *see United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), except the *Brady* question, which is reviewed for abuse of discretion, *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir. 1984).

### A. *Due Process*

■ Evans contends that his original prosecution violated due process because the Bureau of Alcohol, Tobacco and Firearms sanctioned his actions before he committed them. In support of an estoppel by entrapment argument, Evans notes that the government told him that the blank receiver tubes could not be registered as machine guns until they were "cut, drilled, and ready to accept internal parts." He also states that the government gave him a permit to import the gun parts which he acquired. However, although the government does not dispute that it took these

actions, a jury question exists concerning whether these actions misled Evans into reasonably believing that if he agreed to sell and actually sold all these gun parts to third parties with the intent that the third parties assemble the parts into functional machine guns, he would not be guilty of conspiring to cause the illegal possession of machine guns or aiding and abetting the unlawful possession of machine guns. *See United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 821 (9th Cir.) ("In order to show that entrapment exists as a matter of law, there must be undisputed testimony making it patently clear that an otherwise innocent person was induced to commit the act complained of by trickery, persuasion, or fraud of a government agent. The controlling question on review is whether the defendant lacks the predisposition to commit the act.") (citations omitted), *cert. denied*, 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985). Contrary to Evans' assertions, there is nothing surprising about the fact that an act can be legal in isolation but illegal when combined with other acts and a particular state of mind.

■ Evans also argues that the Bureau of Alcohol, Tobacco and Firearms' failure to adopt a formal ruling enumerating what items it would treat as constituting "any combination of parts from which a machine gun can be assembled" within the meaning of 26 U.S.C. § 5845(b) violates due process. However, an agency's failure to issue an interpretative rule clarifying the meaning of a criminal statute, not otherwise seriously argued to be void for vagueness, does not render a defendant's prosecution for violating that statute violative of due process.

### B. *Failure to State an Offense*

■ Evans contends that his original indictment failed to state an offense. He points out that the indictment alleges that he conspired to cause and aided and abetted the illegal possession of a part which requires further refinement from the form

---

**1.** The government argues that the propriety of the district court's denial of Evans' motions is now moot as a result of Evans' plea to the

superseding indictment. The law of our circuit is to the contrary. *United States v. Scott*, 884 F.2d 1163 (9th Cir.1989).

in which he sold it before it can be used in a machine gun. Therefore, he argues, it does not fit the congressional definition of "machine gun," which includes "any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b).

We need not determine whether "can be assembled" countenances parts that need further refinement before assembly, even when those parts are combined with detailed instructions on how to refine them. Evans was not charged with actual possession of machine guns. He was charged only with conspiracy to cause the illegal possession of machine guns and aiding and abetting the illegal possession of machine guns. Thus, even if some of the parts were not sufficiently refined to fall within the statutory definition of "machine gun," he would still be guilty of the conspiracy charge if he simply intended that those to whom he sold the parts actually refined them into parts which could be readily assembled into machine guns. *Cf. United States v. Orozco–Prada*, 732 F.2d 1076, 1080 (2d Cir.) (defendant who laundered money from transactions involving controlled substances guilty of conspiracy to distribute controlled substance), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 155, 83 L.Ed.2d 92 (1984); *United States v. Barnes*, 604 F.2d 121, 154–55 (2d Cir.1979) ("Importers, wholesalers, purchasers of cutting materials, and persons who 'wash' money are all as necessary to the success of the [drug] venture as is the retailer. They can all be held to have agreed with one another in what has been called a 'chain' conspiracy."), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). Similarly, Evans would be guilty of the aiding and abetting charge if those who received the parts actually did assemble them into machine guns. *Cf. United States v. Perry*, 643 F.2d 38, 44 (2d Cir.) (defendants who "agreed to distribute dilu-

ents with the intent that they be mixed with heroin and distributed by one or more heroin networks" could be convicted of conspiring to aid and abet the distribution of heroin), *cert. denied sub nom., Dewees v. United States*, 454 U.S. 835, 102 S.Ct. 138, 70 L.Ed.2d 115 (1981).

The indictment charges that Evans conspired to cause the illegal possession of machine guns and aided and abetted the illegal possession of machine guns. Therefore, it does not fail to state an offense.

### C. *Grand Jury Misconduct*

■ Evans argues that the district court should have dismissed his original indictment because of grand jury misconduct. The government admits that when Agent Wachtel testified before the grand jury that handed down Evans' original indictment he represented that an informal ruling by the Bureau of Alcohol, Tobacco and Firearms was a formal ruling by the agency that parts of the type possessed by Evans met the statutory definition of "machine gun." Even assuming that Wachtel's misrepresentation was perjury,[2] perjured testimony must be material to support dismissal. *United States v. Claiborne*, 765 F.2d 784, 791 (9th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). But as the district court noted,

[t]he misrepresentation did not pertain to a historical fact bearing upon the issue of whether the defendants knowingly possessed the physical items as alleged, or knowingly conspired to cause the illegal possession of those same items. The misrepresentation regarding the stature of the informal letter ruling in issue, does not carry with it, any impermissible connotation which would have bore upon the determination of probable cause made by the grand jury. The term "formal" as used in the context of Wachtel's testimony is significant in a purely legal sense, and its use in the context of

---

**2.** The government contends that Agent Wachtel's misrepresentation was not knowing. According to Wachtel's testimony, Bureau agents regularly call rulings such as the one at issue here formal. The government also contends that Wachtel's characterization was partially based on a letter written by the Bureau's assistant chief counsel to a third party that the ruling represented the Bureau's official position.

**862**

testimony to the grand jury would be of no practical consequence. *United States v. Evans,* 712 F.Supp. 1435, 1446 (D.Mont.1989). Furthermore, because Evans does not contend that the other received testimony was insufficient to support the indictment the district court did not err in refusing to dismiss. *Claiborne,* 765 F.2d at 791–92.

**D. Constitutionality of 26 U.S.C. § 5861(d) and 18 U.S.C. § 922(o)**

Evans contends that Congress lacks the power to prohibit the mere possession of unregistered machine guns without requiring proof of a nexus with interstate commerce. The general standard by which a statute that is said to violate the Commerce Clause is to be measured is firmly established. Although we independently review the validity of an act that is said to violate the Commerce Clause, *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), our review is conducted in a highly deferential manner. We consider whether a reasonable Congress could find that the class of activity regulated affects interstate commerce. *Perez v. United States,* 402 U.S. 146, 152–56, 91 S.Ct. 1357, 1360–62, 28 L.Ed.2d 686 (1971); *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 252–53, 85 S.Ct. 348, 354–55, 13 L.Ed.2d 258 (1964). Congress need not make specific findings of fact to support its conclusion that a class of activity affects interstate commerce. 402 U.S. at 156, 91 S.Ct. at 1362. However, if Congress does make such findings, they carry great weight in this court's analysis. *Id.*

The statutes at issue in this case easily meet this standard. Congress specifically found that at least 750,000 people had been killed in the United States by firearms between the turn of the century and the time of the Act's enactment. It was thus reasonable for Congress to conclude that the possession of firearms affects the national economy, if only through the insurance industry. Since Evans does not contend that any specific Constitutional rights are implicated, this rather tenuous nexus between the activity regulated and interstate commerce is sufficient. *See Heart of Atlanta*

*Motel,* 379 U.S. at 252–53, 85 S.Ct. at 354–55 (race discrimination in hotels affects interstate commerce); *United States v. Wrightwood Dairy Co.,* 315 U.S. 110, 119, 62 S.Ct. 523, 526, 86 L.Ed. 726 (1942) (Congress can regulate the price of milk sold intrastate because of competition with milk sold interstate).

**E. Motion to Suppress**

Agent Wachtel's misrepresentation that the Bureau of Alcohol, Tobacco and Firearms had issued a formal ruling on what items meet the statutory definition of "machine gun," noted above, was also offered in the affidavit the government submitted to the magistrate who issued a search warrant, the execution of which turned up evidence against Evans. Evans contends that the district court erred in refusing to find that search warrant invalid as a result of the misrepresentation and to suppress that evidence. But a court should not exclude evidence obtained pursuant to a search warrant supported by an affidavit containing false statements if the affidavit, purged of the false statements and supplemented by material omissions, would still support a finding that probable cause exists that contraband or evidence of a crime will be found in the specified place. *Cf. Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978) (despite false allegations in affidavit, no evidentiary hearing is required if sufficient content remains in the affidavit to support probable cause); *United States v. Ippolito,* 774 F.2d 1482, 1486 n. 1 (9th Cir.1985). In this case probable cause would still exist. The misrepresentation concerned only a purely legal issue, the status of the Bureau of Alcohol, Tobacco and Firearms' ruling on what parts fall within the statutory definition of "machine gun." And whether that ruling was formal or informal, the combination of parts that the government apparently alleged in the affidavit that Evans and his codefendants at that time possessed is evidence of the offenses for which Evans was charged. *See supra* 861–862.

F. *Alleged Withholding of Brady Material*

 Evans alleges that the district court abused its discretion in refusing to dismiss his case due to the government's alleged failure to produce exculpatory evidence. The evidence to which Evans refers is apparently alleged letters from the Bureau of Alcohol, Tobacco and Firearms to third parties indicating that they could possess materials of the type that served as the basis for the charges against him. However, Evans has not shown how the alleged letters to which Evans refers are material, as they must be before disclosure is required, *see Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Because the alleged letters involved only the Bureau of Alcohol, Tobacco and Firearms' legal views *in other cases,* it is hard to see how this material "would tend to exculpate ... or reduce the penalty" *of Evans. Id.* at 88, 83 S.Ct. at 1197.

Evans claims that he "needed these letters from [the Bureau of Alcohol, Tobacco and Firearms] to establish that possession of unregulated parts kits and unregulated raw materials was not illegal, and that indeed there were legitimate uses for those items." Evans states that "he was indicted and charged for possession of certain items for which there were legitimate uses." But, as we point out above, *see supra* at 861–862, Evans was charged with conspiracy and aiding and abetting others' illegal possession of the parts kits, rather than with his own illegal possession. These charges turn on what Evans intended that end users of the parts kits and receiver tubes did with these items and what the end users actually did with those items. *See supra* at 861–862. The charges do not turn on whether mere possession of those items in their then current state was illegal.

Third, Evans already had at least three letters that the Bureau of Alcohol, Tobacco and Firearms wrote which apparently could be interpreted to imply that mere possession of the material in question was not illegal. Evans has offered no reason to believe that more documents would give him significant new information. *Cf. United States v. Michaels,* 796 F.2d 1112, 1116 (9th Cir.1986) (defendant not entitled to postal inspector's actual notes when he had access to government's summaries of those notes and he "offers no reason for believing that the notes contain significant material that is not contained in the typed summaries"), *cert. denied,* 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987).

## CONCLUSION

We AFFIRM the judgment of the district court.