**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ray Harold EDWARDS, III,
Defendant–Appellant.**

No. 93–10058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1993.

Decided Dec. 21, 1993.

Laurance S. Smith, Sacramento, CA, for defendant-appellant.

Mark J. McKeon, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellee.

Gregory P. Goeckner, O'Melveny & Myers, Los Angeles, CA, for amici curiae.

Before: ALARCÓN, LEAVY and KLEINFELD, Circuit Judges.

ALARCÓN, Circuit Judge:

Ray Harold Edwards, III appeals from his judgment of conviction for violating the Gun Free School Zones Act, 18 U.S.C.A. § 922(q)(1)(A) (West Supp.1993). Pursuant to a plea agreement, Edwards entered a conditional guilty plea in exchange for the Government's dismissal of charges for possession of a sawed-off rifle in violation of 26 U.S.C. § 5861(d). Edwards specifically reserved the right to appeal on the basis that 18 U.S.C. § 922(q)(1)(A) represents an unconstitutional exercise of Congressional power under the Commerce Clause. Edwards also contends that section 922(q)(1)(A) is overbroad. We affirm the judgment of con-

viction because the Gun Free School Zones Act represents a permissible exercise of Congressional authority under the Commerce Clause. Furthermore, we reject Edwards's overbreadth argument.

## I.

### PERTINENT FACTS AND PROCEDURAL HISTORY

On the afternoon of December 11, 1991, Detective Mike Lopez of the Sacramento Police Department gang unit saw Ray Harold Edwards, III with four other males at Grant Union High School. In Lopez's opinion, Edwards and his companions were dressed like gang members, and Lopez requested that three additional officers be dispatched to the school. Four officers and the school security guard subsequently approached the group standing near Edwards's car in the school parking lot. After a brief conversation, Lopez asked Edwards for permission to examine the trunk of his vehicle. Edwards consented and gave Lopez his keys. Lopez discovered a .22 rifle and a sawed-off bolt-action rifle in the trunk.

The Government charged Edwards with the unlawful possession of an unregistered sawed-off rifle in violation of 26 U.S.C. § 5861(d) and the unlawful possession of firearms in a school zone in violation of 18 U.S.C. § 922(q)(1)(A). Edwards filed a motion to dismiss the 18 U.S.C. § 922(q)(1)(A) charge on the basis that the statute was unconstitutional. Edwards further argued that the statute was overbroad. Edwards pleaded guilty, reserving his right to appeal the denial of his motion to dismiss, and appeals solely to challenge the constitutionality of section 922(q)(1)(A).

## II.

### THE GUN FREE SCHOOL ZONES ACT REPRESENTS A VALID EXERCISE OF CONGRESSIONAL POWER UNDER THE COMMERCE CLAUSE

Edwards's primary argument is that 18 U.S.C. § 922(q)(1)(A) violates the Tenth Amendment because Congress did not have the authority under the Commerce Clause or any other delegated power to enact the Gun Free School Zones Act, which prohibits the possession of firearms within 1000 feet of a school.[1] We review de novo the issue of whether section 922(q)(1)(A) represents a legitimate exercise of Congressional authority. *See Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1567 (9th Cir.1993) (constitutionality of a statute is a question of law which is reviewed de novo).

Edwards mistakenly relies on *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) to support his argument that Congress exceeded the scope of its power under the Commerce Clause when it enacted the Gun Free School Zones Act. The challenged statute in *Bass* imposed penalties on a felon who "receives, possesses, or transports in commerce or affecting commerce ... any firearm." 18 U.S.C.App. § 1202(a). The Court could not determine whether Congress intended the statutory phrase "in commerce or affecting commerce" to modify "receives" and "possesses" as well as "transports." *Bass*, 404 U.S. at 339, 92 S.Ct. at 518. If Congress did so intend, the Government was required to establish "as an essential element of the offense that a possession, receipt, or transportation was 'in commerce or affecting commerce'—a burden not undertaken in this prosecution for possession." *Id.* However, if Congress did not intend the phrase to modify "possesses" and "receives," the defendant could have been convicted under the statute for possession of firearms without a showing that the possession took place "in commerce or affecting commerce." *Id.* "Given this ambiguity," the Court employed a narrow construction of the statute, under the rule of lenity, and reversed the conviction because of the Government's failure to demonstrate a nexus with interstate commerce. *Id.* at 347, 92 S.Ct. at 522. The Gun Free School Zones Act is distinguishable from the statute in *Bass* because it does not expressly

---

1. Section 922(q)(1)(A) provides as follows: "It shall be unlawful for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone."

require the Government to establish a nexus between the possession of a firearm in a school zone and interstate commerce. Instead, the Commerce Clause analysis in this appeal is governed by our decision in *United States v. Evans*, 928 F.2d 858 (9th Cir.1991).

In *Evans*, the defendant was convicted of violating 18 U.S.C.A. § 922(*o*) (West Supp. 1993) for possessing an unregistered machine gun. *Evans*, 928 F.2d at 859. As an initial matter, we noted that our review of Congressional enactments under the Commerce Clause is conducted in a highly deferential manner. *Id.* at 862. We relied upon the Supreme Court's decisions in *Perez v. United States*, 402 U.S. 146, 152–56, 91 S.Ct. 1357, 1360–62, 28 L.Ed.2d 686 (1971), and *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 252–53, 85 S.Ct. 348, 354–55, 13 L.Ed.2d 258 (1964) to guide our determination that it was reasonable for Congress to conclude that possession of firearms represents a class of activities which affects interstate commerce. *Evans*, 928 F.2d at 862. Our conclusion in this regard was strengthened by prior Supreme Court decisions which upheld legislation enacted pursuant to the Commerce Clause designed to regulate purely intrastate activities which affect interstate commerce. *See, e.g., United States v. Wrightwood Dairy Co.*, 315 U.S. 110, 118–19, 62 S.Ct. 523, 525–26, 86 L.Ed. 726 (1942) (Congress is permitted to regulate the price of milk sold intrastate because of resulting competitive effect upon milk sold interstate.); *Wickard v. Filburn*, 317 U.S. 111, 127–29, 63 S.Ct. 82, 90–91, 87 L.Ed. 122 (1942) (Congress is permitted to regulate home grown wheat consumption because of its effect on interstate commerce.); *Huddleston v. United States*, 415 U.S. 814, 833, 94 S.Ct. 1262, 1273, 39 L.Ed.2d 782 (1974) (Congress is permitted to regulate intrastate redemption of firearms from pawnshops on the basis that such transactions affect interstate commerce.).

■ We held in *Evans* that the violence created through the possession of firearms adversely affects the national economy, and consequently, it was reasonable for Congress to regulate the possession of firearms pursuant to the Commerce Clause. *Evans*, 928 F.2d at 862. The addition of the condition in

section 922(q)(1)(A) that the firearms be possessed within 1000 feet of a school does not in any way diminish Congress' power to regulate firearms under the Commerce Clause. *See United States v. McDougherty*, 920 F.2d 569, 572 (9th Cir.1990) (penalizing an individual for possession of narcotics within 1000 feet of a school represents an appropriate means of "punish[ing] some behavior affecting commerce more harshly than other behavior, based upon its detriment to society"), *cert. denied*, 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991).

■ In reaching our conclusion in this matter, we reiterate our holding in *Evans* that it is unnecessary for Congress to make express findings that a particular activity or class of activities affects interstate commerce in order to exercise its legislative authority pursuant to the Commerce Clause. *Evans*, 928 F.2d at 862. Our holdings in both *Evans* and the case at bar are entirely consistent with the Supreme Court's Commerce Clause jurisprudence. *See, e.g., Perez v. United States*, 402 U.S. 146, 156, 91 S.Ct. 1357, 1362, 28 L.Ed.2d 686 (1971) ("We have mentioned in detail the economic, financial, and social setting of the problem as revealed to Congress. We do so *not to infer that Congress need make particularized findings in order to legislate*.") (emphasis added); *Katzenbach v. McClung*, 379 U.S. 294, 299, 85 S.Ct. 377, 381, 13 L.Ed.2d 290 (1964) ("As we noted in *Heart of Atlanta Motel* both Houses of Congress conducted prolonged hearings on the Act. And, as we said there, *while no formal findings were made, which of course are not necessary*, it is well that we make mention of the testimony at these hearings the better to understand the problem before Congress and determine whether the Act is a reasonable and appropriate means toward its solution.") (emphasis added).

■ Additionally, we draw support from Justice Powell's observation in *Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980), concerning the requirement that Congress make formal findings as a prerequisite to legislating pursuant to the Commerce Clause. Justice Powell stated that "[a]fter Congress has legislated repeatedly in an area of national concern, its

Members gain experience that may reduce the need for fresh hearings or prolonged debate when Congress again considers action in that area." *Id.* at 503, 100 S.Ct. at 2787 (Powell, J., concurring). Since Congress has frequently relied upon the Commerce Clause as authority for the enactment of statutes regulating the use and possession of firearms,[2] Congress was not required to conduct additional hearings and make new findings which would merely repeat its prior findings concerning the detrimental effect of firearms. Furthermore, contrary to Edwards's contention, Congress was not required to state explicitly that it was acting pursuant to the Commerce Clause when it enacted the Gun Free School Zones Act. *See EEOC v. Wyoming*, 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983) (constitutionality of Congressional action does not depend on its recital of power which it exercises); *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 143, 68 S.Ct. 421, 423–24, 92 L.Ed. 596 (1948) (same).

We recognize that our decision upholding the constitutionality of section 922(q)(1)(A) will create an intercircuit conflict with the Fifth Circuit's opinion in *United States v. Lopez*, 2 F.3d 1342 (5th Cir.1993). We cannot adopt the Fifth Circuit's rationale because we are bound by the law of this circuit to follow the reasoning of our decision in *Evans.*[3] *See Morton v. De Oliveira*, 984 F.2d 289, 292 (9th Cir.) (only an en banc court may overrule a prior decision of this court), *cert. denied*, —— U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 238 (1993); *United States v. Frank*, 956 F.2d 872, 882 (9th Cir.1991) ("In the absence of an intervening Supreme Court decision or an Act of Congress that nullifies Ninth Circuit precedent, we must adhere to the law of the circuit....") (internal citation omitted), *cert. denied*, —— U.S. ——, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992). *Evans* is consistent with the Supreme Court's deci-

sions in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983); *Fullilove v. Klutznick*, 448 U.S. 448, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980); *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); and *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 68 S.Ct. 421, 92 L.Ed. 596 (1948), and there have been no intervening opinions from the Court that run counter to these cases.

If we believed that the reasoning in *Lopez* should be followed, our only alternative would be to call for a vote of the active judges to take this matter en banc in light of the apparent conflict between *Evans* and *Lopez*. *See* Ninth Circuit General Order 5.4.b(1) (1993) ("A panel may recommend a vote on *en banc* rehearing at any time after a case is submitted, but before the mandate issues."). Because we disagree with the Fifth Circuit's analysis in *Lopez*, we apply our decision in *Evans* without recommending an *en banc* hearing.

In *Lopez*, the Fifth Circuit held that section 922(q)(1)(A) was unconstitutional under the Tenth Amendment because it cannot be sustained under the Commerce Clause. *Id.* at 1367–68. The Fifth Circuit considered and rejected our reasoning in *Evans*. *Lopez*, 2 F.3d at 1357 n. 31. The Fifth Circuit disagreed with *Evans* because it could not find any "express or implied Congressional findings" that supported our holding that the possession of firearms affected interstate commerce. *Id.* at 1357. With respect, we believe the Fifth Circuit has misinterpreted, or refused to follow, the decisions of the United States Supreme Court that are binding on all courts inferior to our nation's highest court.

In *Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), the Su-

---

**2.** *See United States v. Lopez*, 2 F.3d 1342, 1348–60 (5th Cir.1993) (outlining the history and substance of the National Firearms Act of 1934, the Federal Firearms Act of 1938, the Omnibus Crime Control and Safe Streets Act of 1968, the Gun Control Act of 1968, the Firearms Owners' Protection Act of 1986, the Undetectable Firearms Act of 1988, the Anti–Drug Abuse Amendments Act of 1988, the Crime Control Act of

1990, and the Gun Free School Zones Act of 1990).

**3.** While *Evans* involved 18 U.S.C. § 922(*o*) and this appeal concerns § 922(q)(1)(A), our determination of the constitutionality of § 922(q)(1)(A) is based upon the same Commerce Clause analysis that we applied in *Evans*.

preme Court instructed that "Congress need not make particularized findings in order to legislate." *Id.* at 156, 91 S.Ct. at 1362. The Fifth Circuit distinguishes this unambiguous principle in a footnote because "[n]o citation of authority is given, nor is the meaning of [this] sentence entirely clear." *Lopez,* 2 F.3d at 1362 n. 41.[4] The Fifth Circuit appears to rely, instead, on the following words from the *Perez* case: "We have mentioned in detail the economic, financial, and social setting of the problem as revealed to Congress." *Perez,* 402 U.S. at 156, 91 S.Ct. at 1362. Unfortunately, the Fifth Circuit failed to consider the third sentence in the same paragraph in which the Supreme Court stated: "We relate the history of the Act in detail to answer the impassioned plea of the petitioner that all that is involved in loan sharking is a traditionally local activity." *Perez,* 402 U.S. at 156–57, 91 S.Ct. at 1362.[5] Contrary to the Fifth Circuit's interpretation of the holding in *Perez,* when read in context, there is no lack of clarity in the Supreme Court's holding that Congressional findings are unnecessary in determining whether a reasonable Congress would conclude that an activity affects interstate commerce. The Supreme Court explained that it had set forth the legislative facts solely to respond to counsel's "impassioned plea." Notwithstanding the Court's holding in *Perez* that findings are not required to sustain an exercise of powers delegated to Congress in the Commerce Clause, the Fifth Circuit ruled in *Lopez* that "[c]ourts cannot properly perform their duty to determine if there is any rational basis for a Congressional findings if neither the legislative history nor the statute itself reveals

any such relevant finding." *Lopez,* 2 F.3d at 1363–64.

This conclusion is not only squarely contrary to the Supreme Court's holding in *Perez,* it also ignores earlier Supreme Court precedent in *Katzenbach.* Where Congress has made an express finding in relation to the challenged regulation and states explicitly that the activity has an impact on interstate commerce, a reviewing court's responsibility to determine whether a reasonable Congress would have found such nexus is simplified. That is the basis for our statement in *Evans* that "if Congress does make such findings, they carry great weight in this court's analysis." *Evans,* 928 F.2d at 862. Where, as here, however, Congress in adopting earlier legislation has found that the activity sought to be regulated affects interstate commerce, additional hearings and findings on this question are unnecessary.

### III.

### EDWARDS LACKS STANDING TO CHALLENGE THE STATUTE AS OVERBROAD

■ Edwards contends that the statute is unconstitutionally overbroad because it would criminalize driving past a school on the way to a skeet shooting range with a gun in the trunk of a car. We do not consider his overbreadth argument because Edwards lacks standing to raise it. He purposely drove to a school and parked in the school parking lot with a gun which he had intentionally brought to the school. Edwards cannot require us to decide whether someone driving past a school with no intention of

4. The Fifth Circuit's suggestion that an inferior federal court is not bound by a ruling of the Supreme Court that is not supported by citation to prior authority is baffling if not heretical. Because the Supreme Court is the highest court in the land, any new principle of law it proclaims in interpreting the constitutionality of a statute will of necessity be unsupported by any prior authority. Whether or not it is supported by citation to relevant precedent, an opinion of our Supreme Court becomes part of the law of the United States which our oaths of office compel us to apply.

5. The entire paragraph reads as follows:

We have mentioned in detail the economic, financial, and social setting of the problem as revealed to Congress. We do so not to infer that Congress need make particularized findings in order to legislate. We relate the history of the Act in detail to answer the impassioned plea of petitioner that all that is involved in loan sharking is traditionally local activity. It appears, instead, that loan sharking in its national setting is one way organized interstate crime holds its guns to the heads of the poor and the rich alike and syphons funds from numerous localities to finance its national operations.
*Perez,* 402 U.S. at 156–57, 91 S.Ct. at 1362–63.

taking a gun to the school might have a constitutional right to engage in that activity. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2914–15, 37 L.Ed.2d 830 (1973) ("a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court").

AFFIRMED.