**UNITED STATES of America, Plaintiff,**

v.

**Shane B. TRIGG, Defendant.**

**Crim. A. No. 93–10089–01.**

United States District Court,
D. Kansas.

Jan. 5, 1994.

Robin Fowler, Asst. U.S. Atty., Wichita, KS, for plaintiff.

Steven K. Gradert, Asst. Federal Public Defender, Wichita, KS, for defendant.

## *MEMORANDUM AND ORDER*

BELOT, District Judge.

This case comes before the court on Trigg's motion to dismiss the indictment, pursuant to Fed.R.Crim.P. 12(b). (Doc. 20)

Trigg was arrested on the premises of Robinson Junior High School in Wichita, Kansas, on September 24, 1993. At the time of his arrest, an unloaded .25 caliber semi-automatic pistol was found in his possession. Trigg was thereafter indicted for possessing a firearm on school property, in violation of 18 U.S.C. § 922(q). Trigg argues § 922(q) is beyond the scope of congressional power to legislate and is therefore unconstitutional. The government contends § 922(q) is a proper exercise of congressional authority under the Commerce Clause. U.S. Const., Art. I, § 8, cl. 3.

The issue presented by Trigg's motion requires the court to strike a delicate balance between the states' traditional authority to

regulate schools and education[1] and the federal government's power to regulate firearms in or affecting interstate commerce. *See generally* Gunther, Constitutional Law, § 5, pp. 147–54 (1985). One of the foundation principles of our Constitution is that the federal government is one of limited and specifically enumerated powers. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). Congress can act only pursuant to a power granted to it by the Constitution. *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 405, 4 L.Ed. 579 (1819). Those powers not delegated to the federal government are reserved to the States or to the people under the Tenth Amendment.

Congress enacted § 922(q) as part of "The Gun Free School Zones Act of 1990," Pub.L. No. 101–647, § 1702, 104 Stat. 4789, 4844–45. Section 922(q)(1)(A) provides:

> It shall be unlawful for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone.[2]

Section 922(q)(1)(B) contains several exceptions, none of which are relevant to this case.

The Tenth Circuit has yet to speak on the constitutionality of § 922(q). The two courts of appeal which have considered the issue are split. In *United States v. Lopez,* 2 F.3d 1342 (5th Cir.1993), the Fifth Circuit held the statute was beyond the power of Congress under the Commerce Clause and therefore unconstitutional. *Id.* at 1367–68. The court began its analysis by providing a comprehensive outline of federal firearms control legislation. The court noted that in contrast to previous firearms legislation, neither § 922(q) nor the legislative history accompanying its passage reflect any attempt by Congress to link the statute to interstate commerce. Conversely, the court noted testimony from a representative of the Bureau

of Alcohol, Tobacco, and Firearms before a House subcommittee expressing concern about the source of constitutional authority for the statute, as well as the statement of President Bush upon signing the Crime Control Act of 1990 that § 922(q) was unnecessary and inappropriately overrode legitimate state firearms laws. *Id.* at 1359–60.

The court then turned its attention to the scope of congressional power under the Commerce Clause. The court found that in a series of decisions culminating in *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), the United States Supreme Court had broadly interpreted this power. The court quoted with approval the following statement in a treatise:

> After *Wickard,* the tests for proper exercise of the commerce power were settled. First, Congress could set the terms for the interstate transportation of persons, products, or services, even if this constituted prohibition or indirect regulation of single state activities. Second, Congress could regulate intrastate activities that had a close and substantial relationship to interstate commerce; this relationship could be established by congressional views of the economic effect of this type of activity. Third, Congress could regulate—under a combined commerce clause—necessary and proper clause analysis—intrastate activities in order to effectuate its regulation of interstate commerce.

*Id.* at 1360–61 (quoting Rotunda & Nowak, *Treatise on Constitutional Law; Substance and Procedure 2nd,* § 4.9 at 404–5).

The court found that where Congress makes findings, either formal or informal, that a regulated activity substantially affects interstate commerce, courts should give such findings great deference. *Id.* at 1363 (Citations omitted). However, neither the statute nor the legislative history surrounding § 922(q)'s enactment contained any such findings. The absence of such findings tend-

---

1. K.S.A. 21–4204(1)(d) makes it unlawful for any person, other than a law enforcement officer, to possess a firearm in or on school property or grounds. The file does not reflect why Trigg was not charged under that statute. Perhaps it is because the offense under Kansas law is a misdemeanor whereas the federal offense is a felony. The wisdom of electing to prosecute federally merely because of increased potential penalties is

a matter which merits careful, case-by-case consideration by the United States Attorney.

2. The Act defines a school zone as follows:

(A) in, or on the grounds of, a public, parochial or private school; or (B) within a distance of 1,000 feet from the grounds of a public, parochial or private school.

ed to indicate, in the court's view, the absence of congressional intent to invoke its power under the Commerce Clause. According to the court, § 922(q) represented a sharp break with the long standing pattern of federal firearms legislation. *Id.* at 1366.

In *United States v. Edwards,* 13 F.3d 291, the Ninth Circuit upheld the constitutionality of § 922(q). The court found its decision was controlled by its holding in *United States v. Evans,* 928 F.2d 858 (9th Cir.1991), wherein the court upheld the constitutionality of 18 U.S.C. § 922(*o*), which made it a crime to possess an unregistered machine gun.

In *Evans,* the court noted that it reviewed a statute alleged to violate the Commerce Clause

> in a highly deferential manner. We consider whether a reasonable Congress could find that the class of activity regulated affects interstate commerce. Congress need not make specific findings of fact to support its conclusion that a class of activity affects interstate commerce.

*Id.* at 862 (Citations omitted).

The *Evans* court found § 922(*o*) easily met this standard. According to the court, the violence created through the possession of firearms adversely affected the national economy, thereby making it reasonable for Congress to regulate the possession of firearms. *Id.*

The *Edwards* court reiterated its view that express findings by Congress were unnecessary for it to exercise its legislative authority pursuant to the Commerce Clause. The court primarily relied on *Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), for this principle. In *Perez,* the Supreme Court was called upon to decide whether the Consumer Credit Protection Act, which placed criminal sanctions upon "extortionate credit transactions,"[3] was a permissible exercise by Congress of its powers under the Commerce Clause. The Court reviewed its prior cases[4] applying the "class of activities" test to the Commerce Clause and found that Perez was clearly a

member of the class that engages in "extortionate credit transactions" and the description of that class had the required definiteness. *Id.* at 153, 91 S.Ct. at 1360. The court noted that "[w]here the *class of activities* is regulated and that *class* is within the reach of federal power, the courts have no power ' "to excise, as trivial, individual instances" ' of the class." *Id.* at 154, 91 S.Ct. at 1361 (citing *Maryland v. Wirtz,* 392 U.S. 183, 193, 88 S.Ct. 2017, 2022, 20 L.Ed.2d 1020 (1968). Applying that principle to the case before it, the Court stated:

> Extortionate credit transactions, though purely intrastate, may in the judgment of Congress affect interstate commerce ... The findings of Congress are quite adequate on that ground ... The essence of all these (congressional) reports and hearings was summarized and embodied in formal congressional findings. They supplied Congress with the knowledge that the loan shark racket provides organized crime with its second most lucrative source of revenue, exacts millions from the pockets of people, coerces its victims into the commission of crimes against property, and causes the takeover by racketeers of legitimate businesses.
>
> We have mentioned in detail the economic, financial, and social setting of the problem as revealed to Congress. We do so not to infer that Congress need make particularized findings in order to legislate. We relate the history of the Act in detail to answer the impassioned plea of petitioner
> . . .

*Id.* at 156, 91 S.Ct. at 1362.

The Ninth Circuit's disagreement with the Fifth Circuit rests on its conflicting interpretation of *Perez* and the necessity for express congressional findings that an activity affects interstate commerce. According to the Ninth Circuit, where Congress, in the course of adopting earlier legislation has found that the activity sought to be regulated affects interstate commerce, additional hearings and findings on this question are unnecessary. *Edwards,* 13 F.3d at p. 292.

---

3. The statute defined "extortionate credit transactions" as any extension of credit with respect to which it is the understanding of the creditor and the debtor at the time it is made that delay in making repayment or failure to make repayment could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person.

18 U.S.C. § 891(6) (1964).

4. *United States v. Darby,* 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); *Atlanta Motel v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); *Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964).

With due respect to the Ninth Circuit, the court finds the views articulated by the Fifth Circuit to be more faithful to the values of federalism embodied in our Constitution. The court cannot agree with the Ninth Circuit's statement that the Fifth Circuit's holding in *Lopez* is squarely contrary to the Supreme Court's holdings in *Perez* and *Katzenbach*. As the Fifth Circuit noted in footnote 41 of its opinion, the statute at issue in *Perez* reflects extensive consideration of and reliance on the evidence before Congress, the legislative history, as well as the formal Congressional findings. In stark contrast, the congressional reports and legislative history make no reference to the impact upon commerce of firearms in schools. Indeed, the absence of any link between the Act and commerce was expressly noted in testimony before Congress.[5]

The court is acutely aware of the problems associated with criminal activity and especially those associated with the increasing use of firearms as an integral aspect of criminal activity. There is no place for weapons—particularly firearms—in and around schools. Nevertheless, Congress must legislate in the area of firearms within the constraints imposed by the Commerce Clause. *See e.g., New York v. United States*, 505 U.S. ——, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Section 922(q), in its present form, is beyond the powers granted to Congress under the Commerce Clause and is hereby declared to be unconstitutional.

Trigg's motion (Doc. 20) to dismiss the indictment is granted.

IT IS SO ORDERED.

---

**5.** The absence from § 922(q) of language indicating Congress' intent to invoke its power under the Commerce Clause is highlighted by two bills introduced in the waning hours of the first session of the 103rd Congress: S. 1607 and H.R. 3355. Each of these bills contains identical language which would specifically amend § 922(q) to reflect Congress' findings regarding the interstate movement of firearms, the negative impact of firearms upon the quality of education in the United States and the difficulties experienced by school systems attempting to handle gun-related crimes. Both bills specifically note Congress' power under the Commerce Clause to enact legislation which proscribes possession of firearms on and near school property.

These proposed amendments lend credence to the Fifth Circuit's analysis and findings regarding the unconstitutionality of § 922(q) in its present form.