**UNITED STATES of America, Plaintiff,**

v.

**Dale MALLORY, and Cheryl Reddick, Defendants.**

**No. 94–6049–CR.**

United States District Court, S.D. Florida.

Feb. 13, 1995.

Sylvia Pinera–Vazquez, Asst. U.S. Atty., Miami, FL, for U.S.

Samuel Smargon, Asst. Federal Public Defender, Miami, FL, for defendants.

### AMENDED ORDER ON MOTION TO DISMISS

FERGUSON, District Judge.

THIS CAUSE came before the court upon defendant Dale Mallory's motion to dismiss the indictment. The broad constitutional question raised by the motion is whether Congress may federalize random street crimes, already regulated by specific state laws, on the basis of the Commerce Clause, where the offenses occurred entirely intrastate. More narrowly, as alleged by the defendants, Title 18 United States Code § 2119, ("the Carjacking Statute") is facially unconstitutional because it has the following defects: (1) lacks a rational nexus to interstate commerce; (2) usurps the constitutional role of the states in regulating theft and robbery offenses; and (3) is vague in defining "a motor vehicle that has been transported, shipped and received in interstate commerce." For the reasons which follow the court grants the motion, finding that the

statute is unconstitutional as applied and that this case belongs in the state court.

### BACKGROUND FACTS

On March 23, 1994, defendants Dale Mallory and Cheryl Reddick were indicted on three separate counts of carjacking, in violation of 18 U.S.C. § 2119 and three counts of knowingly using a firearm in connection with a crime of violence, in violation of 18 U.S.C. 924(c). There are no allegations, proffers or argument that either Mallory or Reddick had an intent to ship the cars in interstate commerce, or that the cars were headed for a "chop shop" to be disassembled and the parts shipped in interstate commerce. Rather, the defendants were apprehended in the same county where the offenses occurred while removing tires from one of the cars that was later identified as stolen.

### DISCUSSION

The legal issue is one that is certain to be reviewed by the appellate court. Nevertheless, a lengthy discussion is unnecessary as all that need be said on the subject has already been said in the many opinions of federal and appellate courts of every circuit. *See United States v. Lopez,* 2 F.3d 1342 (5th Cir.1993) (Section 922(q)(1)(A) unconstitutional under Tenth Amendment because it cannot be sustained under commerce clause), *cert. granted,* —— U.S. ——, 114 S.Ct. 1536, 128 L.Ed.2d 189 (1994); *United States v. Trigg,* 842 F.Supp. 450 (D.Kan.1994) (Section 922(q) beyond powers granted to Congress by commerce clause); *see also, United States v. Cortner,* 834 F.Supp. 242 (M.D.Tenn.1993), *reversed by United States v. Osteen,* 30 F.3d 135 (6th Cir.1994); *But see, United States v. Edwards,* 13 F.3d 291 (9th Cir.1993) (expressly rejecting the reasoning of *Lopez* and upholding the constitutionality of § 922(q)); *United States v. Hunter,* 843 F.Supp. 235 (E.D.Mich.1994) (declining to follow *Lopez* ).

This discussion draws from legal opinions which support the result.

The Anti Car Theft Act of 1992 makes it a federal crime to take or attempt to take a "motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation," by one "possessing a firearm." 18 U.S.C. § 2119. While the majority of district courts considering the question have upheld the constitutionality of the Act, the Fifth Circuit Court of Appeals in *United States v. Lopez, Id.,* has taken a decidedly different view of the scope of Congress' power under the Commerce Clause.

At issue in *Lopez* was the constitutionality of the federal Gun–Free School Zones Act, 18 U.S.C. § 922. The Act makes it illegal to possess a firearm in a school zone. After pleading not guilty to a one-count indictment of violating section 922, Lopez moved to dismiss the indictment on the ground that section 922(q) was an unconstitutional attempt by Congress to legislate control over public schools. The district court denied the motion, concluding that section 922(q) is within Congress' "well-defined power" to regulate interstate commerce.

■ In a well-reasoned opinion, the Fifth Circuit reversed the district court, recognizing that "broad as the commerce power is, its scope is not unlimited, particularly where intrastate activities are concerned." *Id.* at 1361.[1] Although the *Lopez* decision is not controlling,[2] this court finds persuasive the *Lopez* court's thorough analysis of Congress' power under the commerce clause, including its comprehensive documentation of the Clause's historical case-by-case expansion. As now interpreted by the Government, it is virtually boundless. Like the *Lopez* Court, therefore, this court finds that neither the Anti Auto Theft Act itself nor its legislative history reflect any congressional determina-

---

1. In words that lend little support to the expansive reading that courts have accorded Congress' power under the Commerce Clause, Article I of the United States Constitution provides simply that Congress is empowered "to regulate commerce with foreign Nations and among the several States ...." U.S. Const. art. 1, § 8, cl. 3.

2. The issues presented here have been previously addressed by Courts in this district, upholding the statute, *see United States v. Sabini,* 842 F.Supp. 1448 (S.D.Fla.1994), but have not been squarely addressed by the Eleventh Circuit Court of Appeals.

tion that the carjacking denounced by the Act has any substantial impact on interstate commerce.

One of the arguments made by the Government is that the jurisdictional requirement that the regulated activity affect interstate commerce is satisfied on a showing that any component of an automobile (or firearm used in the offense) has at any time in the past crossed state lines. This court is not persuaded. Earlier cases relying upon the Commerce Clause as a jurisdictional basis for federal intervention into activities traditionally regulated by the state have required a showing of "substantial" affect or impact on interstate commerce. *See Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964) (the discriminatory practices to be regulated found "substantially" to affect interstate commerce); *Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (even if regulated activity is local it may be reached by Congress if it exerts a "substantial economic effect on interstate commerce"); *Maryland v. Wirtz,* 392 U.S. 183, 196 n. 27, 88 S.Ct. 2017, 2024 n. 27, 20 L.Ed.2d 1020 (1968) (Court has never declared that "Congress may use a relatively trivial impact on commerce as an excuse for broad general regula-

tion of state or private activities"). The rationale for such a showing may be gleaned from the next discussion.

Responding to a perceived rash of such offenses, and prior to the filing of this indictment, the Florida legislature enacted its own carjacking statute which provides an even heavier penalty than may be imposed under federal sentencing guidelines.[3] Within the provisions of 18 U.S.C. § 2119, however, nothing prevents a federal prosecutor from selectively overriding the state law for reasons that may be purely arbitrary. One such motive for federal intervention may be, as has been whispered on occasion, a disdain for the zeal or competence of state prosecutors. Any articulated justification for even an occasional usurpation of state authority might be viewed as arrogant. For these reasons, according judicial sanction to any congressional enactment which interferes with the State's sovereign powers over local activity, on the mere presumption of constitutional validity, could upset the delicate balance between the Federal Government and the States.

■ Finally, the presumption of constitutionality which attaches to congressional enactments is not as strong where the court is called upon to police the constitutional

3. The Preamble to Florida's Carjacking Statute finds:

> WHEREAS, the Florida Legislature is determined to protect Florida's residents and visitors from harm, and punish those who would injure or abuse any resident or visitor, and WHEREAS, the incidence of armed motor vehicle theft is a threat to human life and to the well-being of all of the citizens of the State of Florida and to the visitors we welcome, and WHEREAS, Floridians recognize armed motor vehicle theft as the crime of 'carjacking', a forcible felony, and
> WHEREAS, carjacking is also a threat to the physical, emotional and economic well-being of the citizens and visitors of this state, and WHEREAS, any person convicted of such felony, or a similar crime, should not have adjudication of guilt suspended, deferred, or withheld unless the offender successfully completes probation or community control;
> NOW THEREFORE.
>
> Section 812.133, Florida Statutes (1993), provides:
> (1) "Carjacking" means the taking of a motor vehicle which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the motor

vehicle, when in the course of the taking there is the use of force, violence, assault, or putting in fear.

> (2)(a) If in the course of committing the carjacking the offender carried a firearm or other deadly weapon, then the carjacking is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.
> (b) If in the course of committing the carjacking the offender carried no firearm, deadly weapon, or other weapon, then the carjacking is a felony of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
> (3)(a) An act shall be deemed "in the course of the taking" if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.
> (b) An act shall be deemed "in the course of a taking" if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.

boundary between the Tenth Amendment (which reserves to the States all powers not delegated to the United States by the Constitution) and the Commerce Clause. *Cf. United States v. Carolene Products Co.*, 304 U.S. 144, 152–53, 58 S.Ct. 778, 783–84, 82 L.Ed. 1234 (1938) ("There may be a narrower scope for the operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten Amendments...." (*cited in Lopez* at 1364)). To not subject the Act to close scrutiny on the facts of this case would be an abdication of responsibility.[4] In light of the similar Florida Carjacking Statute, no reliance can be placed on the Necessary and Proper Clause of the United States Constitution to justify the exercise of federal jurisdiction. *See* U.S. Const. art 1, § 8, cl. 18.

### CONCLUSION

There are no allegations of jurisdictional facts in the six-count indictment other than the boiler-plate recitation that the automobiles and the handgun "had been transported, shipped or received in interstate commerce," which the court concludes is insufficient. This determination does not mean that the Government cannot plead facts which would satisfy federal jurisdictional requirements. The absence of jurisdictional facts, however, along with the absence of clear findings in the statute or legislative history of Title 18 U.S.C. section 2119 that the local crimes sought to be regulated have a substantial impact on interstate commerce, different from murder, robbery, rape, burglary, theft or any other intrastate crime, renders the indictment fatally defective.

For these reasons it is

**ORDERED AND ADJUDGED** that defendant Mallory's Motion to Dismiss is **GRANTED.**

---

4. We know as a practical matter that many lawmakers would avoid haggling over complex constitutional principles when fashioning social legislation deemed urgent. Consider this comment from a freshman lawmaker after a lengthy debate on the crime bill: "Certainly everyone has demonstrated their ability in legal knowledge, and wouldn't it be now nice if we vote on this thing and move on?" *Perspectives*, NEWSWEEK, Feb. 13, 1995, at 21. In other words, deciding the constitutionality of laws is the mundane business of the judicial branch.