**AMERICAN LIFE LEAGUE, INC., et al., Plaintiffs,**

v.

**Janet RENO, Attorney General of the United States, Defendant.**

**Civ. A. No. 94–700–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 16, 1994.

Marion E. Harrison, Falls Church, VA, for plaintiffs.

Neil H. Koslowe, Sp. Litigation Counsel, Federal Programs Branch, Civ. Div., Dept. of Justice, Washington, DC, for defendant.

Rebecca S. Campbell, Covingston & Burling, Washington, DC, for intervenors.

## OPINION AND ORDER

BRINKEMA, District Judge.

### I. The Parties Involved in this Lawsuit.

Plaintiffs, who are opposed to abortion on moral, religious and other grounds, brought this action challenging the constitutionality of the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248 ("FACE" or "the Act"). Along with their Complaint, plaintiffs filed a Motion for a Preliminary Injunction. Defendants filed a Motion to Dismiss. These motions are now before the Court.[1] All parties agreed at oral argument of these motions that the plaintiffs' Second Amended Complaint creates a ripe controversy for this Court to consider and decide.[2]

Plaintiff American Life League, Inc. (ALL) is an organization located in Stafford, Virginia, which conducts various educational and legislative activities "relating to the human rights of persons born or unborn." ALL alleges that it does not advocate or condone violent conduct in pursuit of its goals. However, ALL also alleges that it and its members intend to interfere with abortion providers and to injure them financially, by persuading their customers—pregnant women—not to undergo abortion procedures. Similarly, ALL alleges that its members' activi-

---

[1] On June 3, 1994, the Court previously granted a Motion to Intervene, pursuant to Fed.R.Civ. Pro. 24(a)(2), filed by the National Abortion Federation, Commonwealth Women's Clinic, Capitol Women's Clinic, Dr. George Tiller, Dr. Susan Wicklund and the National Organization for Women. On June 10, 1994, the Court denied, from the bench, plaintiffs' Motion for Class Certification, which had been filed with their Complaint.

[2] Federal courts are courts of limited jurisdiction. *See, e.g. Marbury v. Madison,* 1 Cranch (5 U.S. 137, 173–80, 2 L.Ed. 60 (1803). It is the responsibility of the complainants to allege facts demonstrating that they are the proper parties to invoke judicial resolution of this dispute and that an actual or threatened application of FACE exists. *See, Bender v. Williamsport Area School District,* 475 U.S. 534, 549, 106 S.Ct. 1326, 1335, 89 L.Ed.2d 501 (1986); *Renne v. Greary,* 501 U.S. 312, 319–20, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991). Plaintiffs' original Complaint did not allege that they intended any actions which would arguably invoke the statute in question. Plaintiffs' First Amended Complaint alleged that they have obstructed in the past and "may obstruct" entrances to abortion facilities. At oral argument, after dismissing the Amended Complaint as not ripe, the Court permitted plaintiffs to amend again. Plaintiffs' Second Amended Complaint alleges that while individual plaintiffs are peaceable and nonviolent, "in the aggregate, their action at times has constituted, and in the future will constitute, in the words of FACE, a 'physical obstruction' (that is, temporarily rendering impassable ingress to an abortion facility)" and that by so doing, they interfere with, and/or intimidate and/or injure abortion seekers and providers. As 18 U.S.C. § 248 applies to whoever, by physical obstruction, interferes with a person because that person is obtaining or providing reproductive health services, the plaintiffs' allegations that they plan to do so, combined with their allegations that they have regularly done so in the past, create a sufficient showing that FACE will be applied to them.

ties at various abortion facilities necessarily injure or intimidate pregnant women in that ALL seeks to evoke feelings of religious or moral guilt or general emotional distress, for the purpose of dissuading women from aborting their pregnancies.

Plaintiff Patricia Lohman runs a pregnancy counseling service, located approximately 250 feet from an abortion clinic, which counsels pregnant women about alternatives to abortion. She also shares ALL's intent to obstruct clinic entrances. The other named plaintiffs are individuals who have engaged, and would like to continue to engage, in demonstrating, praying and sidewalk-counseling in the vicinity of facilities which provide abortions. They all claim to be peaceful and nonviolent, but, like ALL's numerous members, they frequently pursue their activities in concert with other like-minded individuals. They allege that their combined physical presence has caused and will cause physical obstruction of the entrance to facilities providing reproductive health care, and that they intend to interfere, nonviolently, with abortion patients and providers.

Defendant Janet Reno, in her capacity as Attorney General of the United States, is charged with the enforcement of the laws of the United States, including FACE.[3] Intervenor National Abortion Federation (NAF) is a professional organization of physicians, nurses and clinics providing reproductive care, including abortions, for women. Intervenors Commonwealth Women's Clinic, Capitol Women's Clinic, Dr. George Tiller and Dr.

Susan Wicklund are clinics and physicians that perform abortions and have been threatened and stalked and whose facilities have been damaged by violent anti-abortion protestors. Intervenor National Organization for Women has among its members thousands of women who may seek abortions or other reproductive health services.

## II. The Statute at Issue.

On May 26, 1994, President Clinton signed the Freedom of Access to Clinic Entrances Act into law, stating that he intended it to be vigorously enforced. FACE is a criminal statute which provides for both criminal penalties and civil remedies against:

"whoever—(1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services."

18 U.S.C. § 248(a)(1).[4] The essential elements of a violation of 18 U.S.C. § 248(a)(1) are conduct and specific intent. The Act prohibits three kinds of conduct: (1) the use of force; (2) the threat of force; and (3) physical obstruction. The specific intent necessary to run afoul of FACE is intent to injure, intimidate or interfere with a person who is obtaining or has obtained or is providing or has provided, reproductive health services. Plaintiffs' nonviolent activities, as de-

---

**3.** On June 6, 1994, in Milwaukee, Wisconsin, Federal prosecutors invoked FACE for the first time, charging six people who were arrested June 4, 1994, after they allegedly used chains and concrete-filled 55 gallon drums to attach themselves to two cars parked so as to block the entrance to a downtown Milwaukee clinic for about ninety minutes.

**4.** The statute provides for the following criminal penalties: for a first offense, a fine or imprisonment for up to one year. Anyone committing a second or subsequent offense shall

> be fined in accordance with this title, or imprisoned not more than 3 years, or both; except that for an offense involving exclusively a nonviolent physical obstruction, the fine shall be not more than $10,000 and the length of imprisonment shall be not more than six months, or both, for the first offense; and the

fine shall be not more than $25,000 and the length of imprisonment shall be not more than 18 months, or both, for a subsequent offense; and except that if bodily injury results, the length of imprisonment shall be not more than 10 years, and if death results, it shall be for any term of years or for life.

Civil remedies include injunctive relief, compensatory and punitive damages, along with costs and reasonable attorney and expert witness fees. In lieu of actual damages, statutory damages of $5,000 per violation are available. 18 U.S.C. § 248(c)(1)(A) and (B). FACE also empowers the Attorney General, of the United States, as well as the state attorneys general to bring civil actions for injunctive relief and civil penalties against individual or group violators. 18 U.S.C. § 248(c)(2) and (3).

scribed in their second Amended Complaint, fall within the statute's ambit because they allege that they will cause a physical obstruction of clinics that provide abortion services, with the requisite intent to financially injure the abortion providers and to "interfere with" the women who may be entering a facility to procure an abortion.

### III. Congress's Authority to Enact FACE.

■ At the outset, the Court rejects the plaintiffs' argument that Congress lacked authority to enact FACE. Congress has the power, under the Commerce Clause, U.S. Const. art. I, § 8, cl. 3, and the Necessary and Proper Clause, U.S. Const. art. I, § 8, cl. 18, to regulate interstate commerce and intrastate activity that affects interstate commerce. *United States v. Wrightwood Dairy Co.,* 315 U.S. 110, 120, 62 S.Ct. 523, 526–27, 86 L.Ed. 726 (1942); *Katzenbach v. McClung,* 379 U.S. 294, 301–302, 85 S.Ct. 377, 382–383, 13 L.Ed.2d 290 (1964); *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). This authority extends to enacting criminal penalties for individual acts, even if not all of the potential defendants had actual connections to interstate commerce. *Perez v. United States,* 402 U.S. 146, 154–156, 91 S.Ct. 1357, 1361–62, 28 L.Ed.2d 686 (1971); *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985). The legislative history of FACE shows that Congress had evidence both of numerous women crossing state lines to obtain reproductive services no longer available in their home states and of anti-abortion organizations crossing state lines in order to orchestrate violence against abortion providers and patients. S.Rep. No. 117, 103d Cong., 1st Sess. The Senate hearings also include extensive testimony concerning the inability and, in some cases, unwillingness of local law enforcement authorities to provide adequate protection for repro-

ductive health service clinics, their staffs, and patients.[5] *Id.* We find that Congress had ample evidence of the impact upon interstate commerce of myriad threats, bombings, stalkings, blockades and assaults inflicted on reproductive health services providers and patients, and that the prohibitions in FACE are a reasonable and appropriate means to address the problem. *See Hodel v. Virginia Surface Mining & Reclamation Ass'n.,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981).

### IV. Freedom of Expression Issues.

At the heart of plaintiffs' constitutional challenge are their arguments that FACE prohibits and penalizes, or chills, free expression of religious, moral and philosophical beliefs; that it impermissibly focuses criminal and civil sanctions on particular viewpoints; and that it is unconstitutionally vague, giving law-abiding citizens inadequate guidance as to exactly what it prohibits.

■ Plaintiffs first argue that FACE is overbroad because they believe it imposes criminal and civil penalties for forms of expression, such as praying and sidewalk counseling, which are covered by the First Amendment. Overbreadth refers to a statute's being written so as to include protected First Amendment activity along with unprotected conduct. *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973). Their argument is largely based on their expressed concern that the term "injure," which is not defined in the Act, might include psychological or emotional injury, which could result from plaintiffs' pure speech. Plaintiffs make the point that pure speech, which is at the core of First Amendment protection, may, and is, in the context of abortion protest, intended to, "injure" by causing emotional pain and to "intimidate" or, if persuasive and articulate, even "interfere." They argue that persons

---

5. For example, the Senate Report notes in its discussion of the need for such legislation that: From 1977 to April 1993, more than 1,000 acts of violence against abortion providers were reported in the United States. These acts included at least 36 bombings, 81 arsons, 131 death threats, 84 assaults, two kidnappings, 327 clinic invasions, and one murder. In ad-

dition, over 6,000 clinic blockades and other disruptions have been reported since 1977. The record before the Committee establishes that state and local law enforcement is inadequate to handle this situation, and that Federal legislation is urgently needed. *Id.* at 3.

who desire to express their views, pray and sidewalk-counsel at the entrance of reproductive health services facilities are now afraid to do so for fear that these peaceful, nonviolent, expressive activities are prohibited by FACE. In other words, plaintiffs argue that their First Amendment expression will be "chilled."

■ Contrary to plaintiffs' assertions, the Court finds that this statute avoids infringing on legitimate First Amendment rights. Nothing in the language of FACE prohibits pure speech; rather the Act criminalizes the use of force, threat of force, and physical obstruction. 18 U.S.C. § 248(a)(1). These acts have long been outside the scope of the First Amendment's protection. *See Wisconsin v. Mitchell,* —— U.S. ——, ——, 113 S.Ct. 2194, 2199, 124 L.Ed.2d 436 (1993). In *Mitchell,* a unanimous Court held that a penalty enhancement for criminal conduct motivated by racial bias did not violate the First Amendment. The Court explained that conduct does not become "speech" entitled to the protection of the First Amendment whenever the actor intends to express an idea through his conduct. *Id.,* quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 628, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact ... are entitled to no constitutional protection"). FACE is crafted to prohibit and penalize only those "potentially expressive" acts that Congress found were producing and would continue to produce "special harms distinct from their communicative impact." *See Roberts, supra.* Even the non-violent blocking which plaintiffs contemplate constitutes the torts of trespass, battery and false imprisonment under state laws. More importantly, in the scenario which plaintiffs have chosen to present for the Court's review, non-violent obstruction of clinic entrances prevents women from · exercising their constitutional right to an abortion. *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Planned Parenthood v. Casey,* —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). The First Amendment protects the plaintiffs' right to hold and express beliefs opposing abortion; it does not

give them unfettered license to express those beliefs in conduct. Similarly, threats to use force are not protected by the First Amendment, and Congress may criminalize threats to a particular victim if doing so furthers an important interest. *See R.A.V. v. City of St. Paul,* —— U.S. ——, ——, 112 S.Ct. 2538, 2546, 120 L.Ed.2d 305 (1992).

Plaintiffs' argument that their rights to pray and counsel will be chilled is but a restatement of the previous argument. As discussed above, FACE does not apply, on its face, to purely verbal activity. Plaintiffs rely upon *R.A.V. v. City of St. Paul, supra,* in which the Supreme Court found a "hate crime" ordinance prohibiting the display of certain symbols, objects, appellations and graffiti facially invalid. This reliance is misplaced. The St. Paul ordinance focussed on particular viewpoints and directly prohibited verbal expression; as discussed *infra,* FACE does neither.

Because FACE's language refers to action, not words, plaintiffs have exercised their creativity to find interpretations of the Act's terms that encompass pure speech. However, their arguments ignore the definitions of the relevant terms included in the Act itself, which each describe tortious conduct rather than viewpoint expression. The Act, for example, defines the term "interfere with" to mean "to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2). Words or prayers alone will not restrict a person's freedom of movement. Speaking or praying accompanied by shoving or positioning oneself to block a walkway, as plaintiffs intend, will restrict a person's freedom of movement. The former—pure speech—does not violate the Act; the latter—speech plus conduct—will create a prohibited interference.

In addition to drafting FACE narrowly so as to prohibit certain conduct, rather than speech, Congress included "Rules of Construction" the first of which is: "—Nothing in this section shall be construed—(1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected by the First Amendment to the Constitution." 18 U.S.C. § 248(d)(1). While the Court agrees with plaintiffs that

Congress could not make a fatally flawed law constitutional merely by including a saving clause, in this context the rule of construction removes any ambiguity which plaintiffs can inject into the otherwise plain meaning of the Act's words. Without ambiguity, there is no chill. Protestors who are not chilled by the existing laws against trespass and assault could not reasonably be chilled by this Act.

 The plaintiffs also argue that FACE is unconstitutionally vague on its face. Their argument is essentially the same one addressed above in the overbreadth discussion. A statute is unconstitutionally vague if people "of common intelligence must guess at its meaning." *Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). The Court does not agree that the Act is vague. The language of FACE is neither technical nor arcane. Moreover, most of the operative words come from other statutes which the Supreme Court has construed and found not unconstitutionally vague. Of particular relevance is the Supreme Court's decision that a statute which prohibited "picketing or mass demonstrations in such a manner as to obstruct or unreasonably interfere with free ingress or egress" was not unconstitutionally vague. *Cameron v. Johnson*, 390 U.S. 611, 612, 88 S.Ct. 1335, 1336, 20 L.Ed.2d 182 (1968). This is the same definition for "physical obstruction" that appears in FACE. This Court cannot hold that this definition is unconstitutionally vague.

The remaining terms, "use of force" and "threat of force" are, without a doubt, clear to anyone making an honest effort to understand rather than ignore the plain meaning of this Act. FACE plainly prohibits only physical obstruction, the use of force, and threats. Congress need not append a laundry list of violent acts, threats and manners of obstructing in order to express its clear intent.

 The plaintiffs further argue that FACE is not viewpoint neutral because, they assert, it applies only to anti-abortion protestors, "and not to persons who use similar tactics or worse to persuade women to have abortions they do not want." Upon a reading of the unambiguous language of FACE,

the Court disagrees with this characterization of the statute. Plaintiffs cannot point to any language in FACE which supports their interpretation. Instead, they rely on a sentence uttered by Senator Kennedy during floor debate of a proposed amendment which was subsequently defeated. The proposed amendment, according to plaintiffs, would have provided a cause of action for would-be protestors who allege violations of their First Amendment rights through the suppression of anti-abortion demonstrations. Senator Kennedy spoke against the proposed amendment, stating "a cause of action for prolife demonstrator[s] will transform the bill from a clinic access bill to a clinic harassment bill." 139 Cong.Rec. S15706 (daily ed., November 16, 1993) (statement of Senator Kennedy). Plaintiffs argue that despite Senator Kennedy's characterizing FACE as "a clinic access bill", his statement supports their position that FACE applies only to anti-abortion protestors. This needle from a veritable haystack of legislative history is not relevant to our interpretation. Where the plain language of a statute is clear and unambiguous, courts do not look to the legislative history to find some different meaning. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3249–50, 73 L.Ed.2d 973 (1982); *Consumer Product Safety Comm'n. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). While it is clear from the Senate hearings that Congress was concerned about protecting clinics from violent anti-abortion protestors, FACE applies to "whoever" engages in the prohibited conduct, with the requisite intent to injure, intimidate or interfere with "any person" who is entering a facility to obtain reproductive health services. 18 U.S.C. § 248. Both the terms "whoever" and "person" are gender-neutral. The Act defines "reproductive health services" as "reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counseling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e). This broad definition of reproductive health services en-

**144**

compasses a wide variety of services and procedures, including diagnosis and treatment of sexually transmitted diseases, infertility testing and treatments, pre-natal care, obstetrics, and, presumably, controversial conception treatments, such as *in vitro* fertilization of surrogate mothers and thawing of frozen embryos. Anyone, male or female, entering a facility seeking any of these medical services is protected under FACE. As such, although the statute is subject-specific in that it protects access to reproductive health services facilities, it is nevertheless viewpoint-neutral.

## V. Free Exercise Clause.

 Finally, plaintiffs assert that FACE violates the Free Exercise Clause of the First Amendment to the Constitution, as well as the Religious Freedom Restoration Act of 1993, 42 U.S.C §§ 2000bb(b)(2), which provides that the government cannot "substantially burden a person's right to exercise of religion" unless it can show that such burden is the least restrictive means of furthering a compelling governmental interest. Plaintiffs' argument is that Congress's passage of FACE was motivated by "animosity to religion." They rely on *Church of Lukumi Babalu Aye v. Hialeah,* —— U.S. ——, ——, 113 S.Ct. 2217, 2234, 124 L.Ed.2d 472 (1993) which struck down a law contrived to prohibit ritual animal sacrifices performed by a particular sect as violating the Establishment Clause. That case is distinguishable from the case at bar in several ways, not the least of which is that animal welfare is not constitutionally protected, whereas a woman's right to an abortion is constitutionally protected. *See Roe* and *Casey, supra.* Moreover, from its legislative history, we know that it was the history of violent attacks against abortion clinics, providers and their patients, and other religion-neutral reasons which motivated Congress to enact FACE.

It suffices here to note that the plaintiffs have not alleged in any of their three complaints and do not contend in their memoranda that physical obstruction of abortion clinics is a sacrament or important ritual necessary to their observance of their faith. They have alleged that they oppose abortion on religious and moral grounds, and that they desire to pray for the souls of women who are obtaining abortions and for the souls of their unborn children. Their goal is to prevent abortions. Nothing in the Act impinges upon plaintiffs' ability to pray for these results. What is limited by the Act is what else they may do while praying and counseling. They may not pray and counsel so as to physically obstruct access to reproductive health service facilities. As defined in the Act, "physical obstruction" means "rendering impassable ingress to or egress from a clinic." This language provides adequate guidance for anyone who truly wants to understand the scope of the Act, rather than look for tortured interpretations of its words. The statute, on its face, neither prohibits nor inhibits such prayers, counseling or self-expression.

## VI. Conclusion.

For the above reasons, the Court holds that FACE is constitutional. The United States' Motion to Dismiss is therefore GRANTED, and plaintiffs' Second Amended Complaint is hereby DISMISSED WITH PREJUDICE. This decision renders moot the plaintiffs' Motion for a Preliminary Injunction.