**UNITED STATES of America,**

v.

**Paul Jennings HILL.**

**No. 94–03118–RV.**

United States District Court,
N.D. Florida,
Pensacola Division.

Sept. 15, 1994.

---

Maureen Duignan, Maureen Duignan, P.A., Pensacola, FL, Roderick D. Vereen, Roderick D. Vereen, P.A., Miami, FL, for defendant.

Paul Jennings Hill, Pensacola, FL, pro se.

David Lee McGee, Asst. U.S. Atty., U.S. Dept. of Justice, U.S. Atty. Office, Tallahassee, FL, for the U.S.

## ORDER

VINSON, District Judge.

Pending is the Defendant's motion to dismiss the indictment. (doc. 12.)

## I. BACKGROUND

In this case, Paul Jennings Hill is charged in the first three counts of a four-count indictment with intentionally injuring and interfering with three individuals who were and had been providing reproductive health services. By doing so, Hill is alleged to have violated the Freedom of Access to Clinic Entrances Act (the "Act"), Title 18, United States Code, Section 248. Hill is additionally charged in Count IV with knowingly using and carrying a firearm during a crime of violence for which he may be prosecuted in federal court, in violation of Title 18, United States Code, Section 924(c).

Hill argues that Congress lacked the authority under the Commerce Clause of the United States Constitution to pass the Act into law. Hill argues in the alternative that even if the Act has a valid basis, the government must prove a connection with interstate commerce as an element of the offense. Hill's third argument is that Congress lacked power under the fifth section of the Fourteenth Amendment to the United States Constitution to enact the Act. Finally, Hill contends that the Act is ambiguous as to whether escorts are providers of reproductive services, and that under the rule of lenity, Hill should not be charged under the Act with injuring James Herman Barrett and June G. Barrett.

## II. ANALYSIS

The Act subjects the individual to criminal penalties who

> by force or threat of force or by physical obstruction, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services. . . .

18 U.S.C. § 248(a)(1). "Reproductive health services" are defined as including the "termination of a pregnancy" and related counselling and referral services. 18 U.S.C. § 248(e)(5).

Hill argues that Congress did not have a rational basis for finding that the activity prohibited by the Act affects interstate commerce. As to this Act, I disagree and find that Congress had authority under the Commerce Clause to enact the Act.

■ The Supreme Court of the United States has determined that Congress has broad powers of regulation on the basis of the Commerce Clause, and may regulate wholly intrastate activities that have an effect upon interstate commerce. *Wickard v. Filburn*, 317 U.S. 111, 125, 63 S.Ct. 82, 89, 87 L.Ed. 122 (1942); *United States v. Darby*, 312 U.S. 100, 119–23, 61 S.Ct. 451, 460–61, 85 L.Ed. 609 (1941). This Court must "defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding." *Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1, 15 (1981). If a rational basis exists, the only inquiry remaining is whether the means chosen by Congress are reasonable. *Id.; Seniors Civil Liberties Ass'n, Inc. v. Kemp*, 965 F.2d 1030, 1034 (11th Cir.1992). Congress is not required to make an express finding that regulated activities affect interstate commerce. *Katzenbach v. McClung*, 379 U.S. 294, 299, 85 S.Ct. 377, 381, 13 L.Ed.2d 290, 295 (1964); *Kemp*, 965 F.2d at 1034; *United States v. Edwards*, 13 F.3d 291, 293 (9th Cir.1993). Furthermore, informal findings in the form of legislative history are sufficient to show the required connection between the activity and interstate commerce. *Kemp*, 965 F.2d at 1034; *Edwards*, 13 F.3d at 293–94; *United States v. Hale*, 978 F.2d 1016, 1018 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1614, 123 L.Ed.2d 174 (1993).[1]

---

**1.** Despite the broad Commerce Clause power, some federal laws seem to have been enacted with a highly questionable nexus to interstate commerce. The Fifth Circuit recently held the Gun Free School Zone Act (18 U.S.C. § 922(q)(1)(A)) unconstitutional on the ground that Congress had provided *no* findings, either formal or informal, showing a connection to the Commerce Clause. *United States v. Lopez*, 2 F.3d 1342 (5th Cir.1993), *cert. granted*, —— U.S. ——, 114 S.Ct. 1536, 128 L.Ed.2d 189 (1994). *Lopez* directly conflicts with *United States v. Edwards*, 13 F.3d 291 (9th Cir.1993) (Gun Free School

Here, Congress unquestionably found that the conduct prohibited under the Act affects interstate commerce. The House and Senate both found that anti-abortion activities involving blockades, violence, and threats of violence are organized across state lines. S.REP. NO. 117, 103rd Cong., 1st Sess. 13 (1993); H.R.REP. NO. 306, 103rd Cong. 6 (1993), *reprinted in* 1994 U.S.C.C.A.N. 699, 703. Additionally, Congress found that anti-abortion activities "burden[ ] interstate commerce by forcing patients to travel from states where their access to reproductive health services is obstructed to other states...." H.R.CONF.REP. NO. 488, 103rd Cong. 7 (1994), *reprinted in* 1994 U.S.C.C.A.N. 724. Such activities interfere with the "interstate commercial activities" of providers by reducing interstate purchases of goods and equipment and interstate sales of goods and services. *Id.* These findings were based on various hearings during which providers, patients, and other interested parties testified to the national scope of the problem. House Report, at p. 3–5. Both the House and the Senate found that a uniform, federal law was necessary to combat the problem, since "a patchwork of State and local laws is inherently inadequate to address what is a nationwide, interstate phenomenon." Sen. Report, at p. 19; House Report, at p. 10.

▮ I conclude that there is a rational basis for Congress' determination that the activity the Act regulates affects interstate commerce. The classes that the Act seeks to protect and to restrict have, as a whole, a substantial effect on interstate commerce, and local activities that are part of a class with a significant cumulative effect on interstate commerce are subject to federal regulation. *Habersham Mills v. F.E.R.C.*, 976 F.2d 1381, 1384 (11th Cir.1992). I additionally find that the Act is a reasonable means of addressing the problems identified by Con-

gress, and conclude that Congress had the power under the Commerce Clause to pass the Act into law.[2] Although Hill argues that Attorney General Reno's testimony as to the Act's connection with interstate commerce is not supported by evidence, the legislative history shows that Congress did not depend solely on her testimony, but used a variety of sources to explore the scope of the problem. *See* House Report, at pgs. 3–6 (listing the individuals and groups testifying at various hearings).

▮ Hill's alternative argument that the government must prove a nexus with interstate commerce is unpersuasive. Although Hill provides several examples of statutes that require a connection with interstate commerce as an element of the criminal offense, such an element is not required. Even where a criminal statute is based upon the Commerce Clause, it is not necessary for the statute itself to require that the illegal act affect or involve interstate commerce. *Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971); *United States v. Pearson,* 8 F.3d 631, 633 (8th Cir.1993); *United States v. Evans,* 928 F.2d 858, 862 (9th Cir.1991).[3] Nor is it necessary that a defendant convicted under the statute have performed an act affecting interstate commerce. *Perez v. United States, supra.* In *Perez,* the defendant was convicted under the Consumer Credit Protection Act (18 U.S.C. §§ 891 et. seq.) for using threats of violence to collect debts. The Court held that extortionate credit transactions, as a class, could reasonably be found to affect interstate commerce, and that the fact that a particular transaction was purely intrastate would not prevent conviction under the statute. 402 U.S. at 154, 91 S.Ct. at 1361, 28 L.Ed.2d at 692. An interstate commerce element is not contained in the Act currently under consideration, and is not required. Whether Hill's acts or the activities of the clinic had an

Zone Act held constitutional on Commerce Clause basis).

**2.** Other courts have reached similar conclusions. *See American Life League v. Reno,* 855 F.Supp. 137 (E.D.Va.1994); *Council For Life Coalition v. Reno,* 856 F.Supp. 1422 (S.D.Ca.1994); *Riely v. Reno,* 860 F.Supp. 693 (D.Ariz.1994) (all holding

the Freedom of Access to Clinic Act constitutional under the Commerce Clause).

**3.** *See Riely v. Reno,* 860 F.Supp. 693 (D.Ariz. 1994) (holding that the government is not required to prove an interstate commerce connection under the Freedom of Access to Clinic Entrances Act).

effect on interstate commerce is irrelevant, since the Act itself is properly based on the Commerce Clause.[4]

Hill attempts to distinguish past cases by contending that since the Act attempts to regulate buildings, and since only buildings in interstate commerce can be regulated, interstate commerce must be proven as an element of an offense under 18 U.S.C. § 248(a)(1). Hill apparently derives this argument from subsection (a)(3), which makes it a crime to "intentionally damage[ ] or destroy[ ] the property of a facility . . . because such facility provides reproductive health services. . . ." His argument is misguided. Subsection (a)(3) is not relevant to the acts of which Hill is accused. Moreover, the Act regulates behavior affecting such facilities rather than the facilities themselves.

Hill next contends that Congress lacked the authority under section (5) of the Fourteenth Amendment to pass the Act. The government contends that Congress has the power to protect the "liberty" interest of women under the equal protection prong of the Fourteenth Amendment by the implementation provision of section (5). This is an area of constitutional law to which the Supreme Court has not definitively spoken. However, since the Commerce Clause provides a sufficient constitutional basis for the Act, I need not reach this issue, and decline to do so.

Hill's final argument is that because the Act is ambiguous as to whether injuring an escort is punishable, the rule of lenity should be applied and Counts II and III dismissed. Hill contends that the Act covers only persons "obtaining or providing reproductive health services," 18 U.S.C. § 248(a)(1), and that since Dr. Britton's two escorts did not perform or assist in performing abortions, any actions taken against them did not violate the criminal provisions of the Act.

■■■ The fact that a criminal statute is subject to differing interpretations does not mean that the rule of lenity automatically applies. " 'The principle of lenity is " 'not an

inexorable command to override common sense and evident statutory purpose.' " Indeed, the doctrine of lenity should not be invoked until a court " 'seiz[ing] everything from which aid can be derived, . . . [is] left with an ambiguous statute.' " ' " United States v. James, 986 F.2d 441, 444 (11th Cir.1993) (citations omitted). Thus the language of the Act, together with its purpose and legislative history, must be considered in deciding whether to invoke the rule.

"In determining the scope of a statute, we look first to its language. . . ." United States v. Turkette, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246, 252 (1981). The language of the Act prohibits intentionally injuring, intimidating, or interfering with "any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services." 18 U.S.C. § 248(a)(1). "Reproductive health services" are defined as services "provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e)(5). The statutory language is not a model of clarity, but its broad coverage of prohibited activities shows the desire of Congress to aim broadly in correcting the problem.

The Act's purpose and history show that such broad coverage reflects Congressional intent. The statement of purpose accompanying the statute states that the Act provides criminal penalties "for certain violent, threatening, obstructive and destructive conduct that is intended to injure, intimidate or interfere with persons seeking to obtain or provide reproductive health services." Pub.L. No. 103–259, § 2, 108 Stat. 694. The House Report states that "the Act covers attacks, threats and blockades used directly against a person who is obtaining or providing reproductive health services. The Act also covers attacks, threats and blockades against a par-

---

**4.** I note, however, that the surrounding facts and circumstances actually involved in this case seem to involve numerous interstate activities, but in the absence of an evidentiary record, I decline to make any determinations in that regard.

ticular victim that are meant to intimidate other persons or classes of persons who may be obtaining or providing reproductive health services, or that are taken because others have obtained or provided reproductive health services." House Report, at p. 12, 1994 U.S.C.C.A.N. p. 709. The House Report further states that the Act is intended to be used against those "who use ... assaults, and other violent and threatening tactics against the women who seek reproductive health services, the providers of such services, and their respective families." House Report, at p. 3, 1994 U.S.C.C.A.N. 699, 700. It appears that Congress was concerned not only with the safety of doctors and nurses, but also with the safety of others who are essential to the provision of clinic services. As evidenced by the concerns of doctors and clinic directors voiced in the hearings before Congress, escorts are considered an integral part of the functioning of clinics.

Lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute." *Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449, 458 (1990); *United States v. Curry,* 902 F.2d 912, 915 (11th Cir.1990), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 973, 112 L.Ed.2d 1059 (1991); *United States v. Pollen,* 978 F.2d 78, 85 (3rd Cir.1992), *cert. denied,* — U.S. —, 114 S.Ct. 697, 126 L.Ed.2d 664 (1993). I find that the Act, in light of its purpose and legislative history, includes a doctor's escort in the definition of "provider," at least where the escort is performing his or her duties at the time of the alleged violation of the Act. Since Hill is alleged to have injured escorts performing their duties, he is subject to prosecution under 18 U.S.C. § 248(a)(1).

III. *CONCLUSION*

For these reasons, the motion to dismiss the indictment is DENIED.

DONE AND ORDERED.