**UNITED STATES of America, et al.**

v.

**Stanley G. SCOTT, et al.**

**No. 3:95cv1216(AHN).**

United States District Court,
D. Connecticut.

June 12, 1997.

Jennifer Jaff, Asst. Atty. Gen., Hartford, CT, Sharon Jaffe, Asst. U.S. Atty., Bridge-port, CT, for Plaintiffs.

Vincent McCarthy, New Milford, CT, for Defendants.

## *RULING ON DEFENDANT SCOTT'S MOTION FOR RECONSIDERATION*

NEVAS, District Judge.

By Memorandum of Decision and Order dated April 2, 1997, the court concluded that the defendant, Stanley G. Scott ("Scott"), violated the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 ("FACE"), on several occasions. The court also issued an injunction against Scott which limited his conduct with respect to the Summit Women's Center ("Summit"), in Bridgeport, Connecticut. *See United States v. Scott,* 958 F.Supp. 761, 784 (D.Conn.1997).

Now pending before the court are Scott's Motions for Reconsideration Pursuant to Rule 9(e), Loc. R. Civ. P., and/or to Alter or Amend the Memorandum of Decision, Order and Judgment Pursuant to Rule 59(e), Fed. R.Civ.P. [docs. # 284, 288]. Construing these as motions to alter or amend the judgment, pursuant to Rule 59(e),[1] they are DENIED in accordance with the following clarification of the court's April 2, 1997 Memorandum of Decision and Order.

## *DISCUSSION*

On April 2, 1997, the court issued the following injunction:

[I]t is HEREBY ORDERED that Stanley G. Scott and persons in active concert with him who receive actual or constructive notice of this injunction are permanently ENJOINED from:

1) Threatening, either orally or in writing, any person who is or has been obtaining or providing reproductive health services at Summit; 2) Impeding or obstructing any such person's free access to or egress from Summit; 3) Using their bodies, signs or other objects to push, shove, bump, step on, or engage in any other physical contact with any such person; 4) Coming within

fourteen feet (14′) of any entrance to Summit, or being present in that portion of the street directly in front of Summit which is designated as a no-parking zone; and 5) Yelling, shouting and using bullhorns, auto horns or other sound amplification equipment within the following areas:

a) On Middle Street, between Golden Hill Street and the parking lot one block north of Gold Street, shown on Appendix A as "Parking # 1;" b) In any area in the parking lot shown on Appendix A as "Parking # 1;" c) On Gold Street, between Main Street and Middle Street; d) In the parking lot at the corner of Gold Street and Main Street, shown on Appendix A as "Parking # 2;" e) In the parking lot diagonally across the street from Summit, shown on Appendix A as "Parking # 3;" and f) On the public roadways and sidewalks which connect the parking lot shown on Appendix A as "Parking # 3" to the sidewalk directly in front of Summit.

In light of the court's findings that defendant Stanley G. Scott has repeatedly come into physical contact with clinic escorts and has repeatedly obstructed the path of clinic patients, it is FURTHER ORDERED that each day from and including Tuesday through Saturday, between the hours of 7:00 a.m. and 6:00 p.m., within an area in downtown Bridgeport bounded by Main Street, Golden Hill Street, Middle Street, and Gold Street (including the sidewalks and roadways), and within the three parking lots that are used by persons obtaining or providing services at Summit, shown on Appendix A as "Parking # 1," "Parking # 2" and "Parking # 3," and the portion of the public sidewalks and roadways which abut these three parking lots, Stanley G. Scott, and persons in active concert with him who receive actual or constructive notice of this injunction, are permanently ENJOINED from:

---

1. "[A] motion which asks the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under Fed. R.Civ.P. 59(e)." *Appeal of Sun Pipe Line Co.,* 831 F.2d 22, 24 (1st Cir.1987), *cert denied,* 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

Thus, a motion for reconsideration of a civil judgment should be construed as a motion to alter or amend, pursuant to Rule 59(e). *See id.; United States v. Gargano,* 826 F.2d 610, 611 (7th Cir.1987).

1) Coming within five feet (5') of any person who is or has been obtaining or providing reproductive health services *once* that person indicates verbally that he or she does not want to accept literature or listen to any communication or counseling; and 2) Coming within five feet (5') of an automobile occupied by any such person *once* that person indicates verbally that he or she does not want to accept literature or listen to any communication or counseling.

For the purposes of this ORDER, a Summit escort is a "person who is or has been obtaining or providing reproductive health services."

*See Scott,* 958 F.Supp. at 784.

Scott seeks to modify the court's injunction as follows: (1) by eliminating the portion of the injunction which enjoins Scott from coming within five feet of any person who is or has been obtaining or providing reproductive health services at Summit; (2) by eliminating the portion of the injunction which enjoins him from coming within five feet of any automobile occupied by any such person; (3) by limiting the fixed zone placed around the entrance to Summit to eleven feet; (4) by changing the injunction so that it only prohibits Scott from yelling loud enough so that he can be heard inside Summit; and (5) by holding that Summit escorts are not persons who have been "obtaining or providing reproductive health services," and thus are not covered by the injunction. (*See* Def.'s Mem. Supp. Mot. Recons. [hereinafter "Def.'s Mem."] at 3–4.)

### I. *Eliminating Five Foot Zone Around Persons*

■ Scott, relying on *Schenck v. Pro–Choice Network of Western N.Y.,* —— U.S. ——, 117 S.Ct. 855, 137 L.Ed.2d 1 (1997), argues that the court must eliminate the five

foot buffer zone around persons obtaining or providing reproductive health services at Summit because such "floating zones" are unconstitutional. *See id.* at ——, 117 S.Ct. at 868 ("Since there may well be other ways to both effect such separation and yet provide certainty … we conclude that the floating buffer zones burden more speech than necessary to serve the relevant governmental interests.") The court disagrees.

In *Schenck,* the Supreme Court *specifically* stated, however, that it "need not decide whether the governmental interests involved would ever justify some sort of *zone of separation* between individuals entering the clinics and protesters, measured by the distance between the two." *See Schenck,* —— U.S. at ——, 117 S.Ct. at 867 (emphasis added). Here, the court concluded, and now reaffirms, that such a zone of separation is necessary and justified based on Scott's repeated and consistent violations of FACE by force, threat of force and physical obstruction, and his frequent nose-to-nose confrontations with patients and escorts.

Furthermore, the facts of this case are distinguishable from those of *Schenck.* First, this court constructed a five foot zone, not a fifteen foot zone. Second, the zone in this case *only* enjoins the activities of one individual (Scott), not an entire group of people (Project Rescue). Third, and most significantly, this zone is limited to the streets and parking lots in the immediate vicinity of Summit, as shown on the map accompanying the order. Consequently, there is no danger that the protection afforded by the injunction will extend or "float" beyond the relevant area.[2] *See Schenck,* —— U.S. at ——, 117 S.Ct. at 877 (discussing whether the fifteen foot floating zone would apply after someone left the immediate vicinity of the clinic) (Breyer, J., dissenting). Thus, the court has created a small and

---

**2.** There is another significant difference between this case and *Schenck.* While in *Schenck,* the district court issued an injunction in response to a motion under Rule 65, Fed.R.Civ.P., in this case, the court issued an injunction as relief in response to its findings that on numerous occasions Scott violated FACE. FACE explicitly states that activities protected by the First Amendment do not violate the statute. *See* 18 U.S.C. § 248(d)(1). Thus, by ruling that Scott

violated FACE on numerous occasions, the court already addressed many of the First Amendment concerns typically raised in response to a motion under Rule 65. *See Scott,* 958 F.Supp. at 775–76; *see also SEC v. Management Dynamics,* 515 F.2d 801, 808 (2d Cir.1975) (holding that there is no need to show irreparable harm or inadequacy of other remedies in suit for injunction to remedy violation of federal statute).

bounded zone, not the type of floating zone invalidated by *Schenck.*

## II. *Eliminating Zone Around Automobiles*

■ As support for eliminating the court's five foot zone around automobiles, Scott again cites *Schenck,* arguing that there the Court struck down *all* floating buffer zones around automobiles. Nothing in *Schenck* creates such a prohibition. Rather, the Court stated:

> Nothing in the record or the District Court's opinion contradicts the common sense notion that a more limited injunction—which keeps protesters away from driveways and parking lot entrances (as the fixed buffer zones do) and off the streets, for instance—would be sufficient to insure that drivers are not confused about how to enter the clinic and are able to gain access to its driveways and parking lots safely and easily.

*Schenck,* —— U.S. at ——, 117 S.Ct. at 868. The record in *Schenck* does not contain any evidence that the protesters did more than obstruct the driveways and entrances to the clinic's parking lots. Thus, as the Court held, a fixed zone would have been more than adequate to protect the interests involved.

In this case, however, a five foot zone is warranted to create some measure of protection around the automobiles of Summit staff, escorts and patients. Summit, which is located at the corner of Middle Street and Gold Street in downtown Bridgeport, does not have its own parking lots. Hence, the Summit staff, escorts and patients must park their cars in public parking lots. Seizing upon these circumstances, Scott frequently protested in and around these public parking lots. According to the court's findings, Scott

obstructed patients as they exited their cars, "often [standing] so close ... that patients were unable to open their car doors." This five foot zone around automobiles is *less* restrictive than a fixed zone in and around the parking lots. Under the former, Scott can still protest in the parking lots, while under the latter, Scott is unable to even enter them.

## III. *Limiting Fixed Zone to Eleven Feet*

■ Scott argues that the court should reduce the fixed buffer zone in front of Summit from fourteen feet to eleven feet, to allow him to walk back and forth in front of Summit, without having to walk in the street.[3] The court disagrees.

In *Madsen v. Women's Health Center, Inc.,* 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), the Supreme Court upheld a 36-foot fixed buffer zone which required the protesters to move to the other side of the street from the clinic. "Protesters standing across the narrow street from the clinic *can still be seen and heard from the clinic parking lots." Madsen,* 512 U.S. at 770, 114 S.Ct. at 2527 (emphasis added and citation omitted). The fixed buffer zone upheld in *Madsen* is far more restrictive than the fourteen foot zone that the court creates in this case. Unlike the protesters in *Madsen,* Scott does not have to protest from the other side of the street. He can protest anywhere on the sidewalk in front of Summit, provided that he does not enter the fourteen foot zone directly in front of Summit's entrance. The injunction simply requires him to cross the street if he wants to move from one side of the entrance to the other.[4]

**3.** As a preliminary matter, Scott suggests that the court's injunction should be interpreted as creating a fixed zone starting from the clinic's recessed doors. The court disagrees. Summit's doors are recessed six feet from the sidewalk, and the sidewalk is thirteen and one-half feet wide. Thus, measuring the fourteen foot fixed zone from the recessed doors would allow Scott five and one-half feet to walk back and forth on the sidewalk in front of Summit. The fourteen foot restriction should be measured from where Summit's entranceway meets the sidewalk, not from its recessed doors, so as to prevent Scott

from walking back and forth directly in front of Summit's entrance.

**4.** Scott's claim that the fourteen foot zone exposes him to a greater risk of injury from vehicular traffic lacks merit. (*See* Def.'s Mem. at 8.) Because there are almost no other stores or offices in the vicinity of Summit, and because Middle Street dead ends one block north of where Summit is located, vehicular traffic is very light in this area and is almost exclusively limited to automobiles delivering passengers to the clinic.

Moreover, the fourteen foot zone is justified in order to establish an area in front of the clinic in which automobiles can drop off patients and in which patients can walk without having to fear confrontation with Scott. Scott can adequately spread his message to those entering and leaving the clinic by standing on the sidewalk in front of the clinic, on either side of the entrance. Accordingly, the court refuses to alter the fourteen foot fixed zone.

## IV. *Limiting Noise Restriction*

▮ Scott claims that the court should amend the injunction to prevent him from engaging in yelling or shouting *which is audible inside of Summit.* In *Madsen,* the Court upheld an injunction prohibiting "sounds ... within earshot of the patients inside the clinic." *Madsen,* 512 U.S. at 772, 114 S.Ct. at 2528. Scott cites *Madsen* in support of his claim that the court can only enjoin him from yelling loud enough to be heard inside the clinic.

The court is mindful of the noise restriction upheld in *Madsen.* In fact, the plaintiffs in this case initially requested the exact noise restriction that Scott now advocates. (*See* Second Am. Compl. ¶ 31(d)(4).) However, such a noise restriction presents serious practical concerns, especially in this case, where there is ample evidence of continuous conflict between the escorts and Summit staff, and Scott. Who would determine whether Scott was yelling loud enough so that he could be heard inside the clinic? The court can envision a situation in which Scott vigorously denies that he can be heard inside the clinic, while Summit staff and escorts insist that his voice is clearly audible throughout the building. The court enjoined Scott from "[y]elling, shouting and using bullhorns, auto horns or other sound amplification equipment" within a limited area around the clinic in order to avoid such enforcement problems.

## V. *Excluding Escorts from Scope of Injunction*

▮ Lastly, Scott argues that the court should modify its order to specify that a clinic escort is *not* a "person who is or has been obtaining or providing reproductive health services" and, thus, cannot invoke the five foot buffer zones. Scott claims that escorts are invoking the five foot zones offensively, surrounding patients and telling Scott to move away, so as to prevent him from having any access to patients entering or leaving the clinic.

FACE protects escorts who are assisting patients and staff in obtaining access to clinics. *See* S.Rep. No. 103–117, at 26 (1993) (stating that "[p]ersons injured in the course of assisting patients or staff in gaining access to a facility" can bring suit under FACE); *United States v. Hill,* 893 F.Supp. 1034, 1038–39 (N.D.Fla.1994) (holding that physician's escort was "provider" covered by FACE). The injunction's protection of escorts is entirely appropriate because some of Scott's most violative activities were directed at the escorts. According to the court's findings, Scott repeatedly blocked, pushed, shoved and kicked escorts, often knocking them down or preventing them from walking with patients.[5]

Furthermore, the five foot restriction is *not* a restriction on Scott's freedom of speech. He can continue to spread his message; he simply must retreat five feet when asked to do so by either a patient or escort. The five foot zone was intended to strike a balance between allowing Scott to spread his message in as vigorous a manner as he chooses, and protecting escorts, patients and staff from physical confrontations with Scott. Therefore, the court will not limit its application beyond that which is ordered in the original injunction.

Nonetheless, the court cautions the escorts to refrain from engaging in the type of activity that Scott complains of in this motion.

---

**5.** Scott suggests that the injunction would be sufficient if it simply enjoined him from engaging in conduct which would be considered violative of FACE. The court, however, is not persuaded. Neither Congress's enactment of FACE nor Scott's fourteen arrests and numerous warnings by police prevented him from engaging in the abusive conduct which formed the basis for this court's findings. In fact, it remains to be seen whether the court's injunction will prevent Scott from engaging in such conduct.

The injunction sufficiently protects patients from the type of physical contact with Scott that escorts formerly tried to prevent by walking on all sides of patients as they entered Summit. As a result of the injunction, it is no longer necessary for escorts to surround patients in order to protect them from Scott. In the future, if escorts use this injunction as a sword, rather than as a shield, Scott will likely make another motion to modify the order so as to prevent such conduct, and, at that time, the court may reconsider its position.

### CONCLUSION

For the reasons stated above, Scott's Motions for Reconsideration and/or to Alter or Amend the Memorandum of Decision, Order and Judgment [docs. #184, 188] are DENIED.