Janet **GREENHUT**, Plaintiff,

v.

Alice **HAND**, Defendant.

No. Civ.A. 96–5354 (MTB).

United States District Court,
D. New Jersey.

Feb. 25, 1998.

---

Russell J. Passamano, Passamano & Hunt, Hackensack, NJ, for Plaintiff.

Stanley J. Teich, North Bergen, NJ, Lee R. Lederman, Piscataway, NJ, for Defendant.

## *OPINION*

BARRY, District Judge.

Plaintiff Janet Greenhut has filed a motion for summary judgment as to Counts One and Two of her complaint against defendant Alice Hand electing, if successful, to recover statutory damages of $5,000 per violation in lieu of actual compensatory damages with the question of punitive damages left to a future proof hearing. This court will grant plaintiff's motion and award statutory damages.

### I.

The facts are brief and undisputed. Plaintiff was a volunteer for a pro-life organization called "Birthright." Greenhut Deposition, Exh. D at 5, annexed to Hand Certification. According to Kathy Semsey, the director of the Maywood, New Jersey chapter, Birthright

provides pregnant women with guidance, practical and emotional support during

pregnancy and afterwards in some cases, referrals to doctors and other providers of medical services, referral services to community resources, limited financial support, maternity and baby clothes, free pregnancy tests and information relating to pregnancy, fetal development and alternatives to abortion.

Semsey Certification, at ¶ 4. After business hours, the message on the organization's answering machine would identify Birthright and its services, as well as give names and telephone numbers of volunteers that could be called for immediate assistance. *Id.* at ¶¶ 10–11. These "on-call" volunteers were equipped with the Birthright Resource Guide so that they could provide counseling, referrals or other aid from their homes. Plaintiff's name and home number were given on Birthright's answering machine's message. *Id.* at ¶ 12.

On the night of January 13 and the early morning hours of January 14, 1995, defendant made four telephone calls to plaintiff's residence.[1] NYNEX Records, Exh. F annexed to Passamano Certification. Plaintiff was not home at the time the phone calls were made but defendant's messages were recorded on plaintiff's answering machine with time and date stamp. *See* Greenhut Deposition, Exh. D. at 8, annexed to Hand Certification. The first message, left at 11:39PM, stated, "Hello Janet. Get your murderers away from abortion clinics now or you will be killed." *See* Transcript of Answering Machine Message, Exh. E annexed to Passamano Certification. Then, at 12:57AM, defendant left the message, "Janet, get your pro-lifers away from our clinics or we will kill you." *Id.*

Criminal charges were brought against defendant and on December 11, 1995, she pled guilty in the Superior Court of New Jersey, Passaic County, to one count of making terroristic threats in violation of N.J.S.A. 2C:12–3b. Transcript of Plea, Exh. H annexed to Passamano Certification. On November 19, 1996, plaintiff filed this action against defendant and various John and Jane Does and Roes. Counts One and Two, the subject of the instant motion, seek relief against defendant under the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248, which prohibits, in relevant part, threats of force which intimidate or interfere with a person because that person provides reproductive health services. Counts Three and Four allege that defendants John and Jane Does 1–10 and John and Jane Roes 1–10 "induced and/or conspired with defendant Alice Hand" in the conduct described in Counts One and Two, and will be dismissed by the court on its own motion.[2] Count Five alleges that defendant Hand "intentionally or recklessly" engaged in "extreme and outrageous conduct," causing plaintiff "severe emotional distress."

## II.

Summary judgment may be granted if, after consideration of such items as depositions, affidavits or certifications, and after viewing the facts in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex*

1. Although defendant states that she does not remember making the phone calls because she had been drinking heavily, whether she actually made the calls is not in dispute. Telephone records indicate that after defendant called New Jersey Directory Assistance and then Birthright, calls were made from her residence to plaintiff's residence. *See* NYNEX Records, Exh. F annexed to Passamano Certification. Defendant admits that she was the only person at her house at the time the calls were made. *See* Hand Deposition, Exh. C at 17–18 annexed to Hand Certification. In addition, the telephone calls were recorded on plaintiff's answering machine and defendant admits that the voice on the answering machine tape is her voice. *Id.* at 9. All in all, over a

period of approximately one and one-half hours, defendant called Birthright twice and plaintiff four times, twice leaving threatening messages. Also on the evening of January 13, 1995, defendant made four calls to the Sacred Heart Roman Catholic Church in Suffern, New York, ordering the Assistant Pastor to "call off your pro-lifers from the abortion clinics, or we will bomb your church" and, in two later calls, again ordering the calling off of pro-lifer protests "or your school will be bombed." Exh. I annexed to Passamano Certification.

2. Discovery has closed and there is no evidence which supports Counts Three and Four.

*Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 536 n. 3 (3d Cir.1994).

In relevant part, FACE imposes civil penalties on anyone who uses threats of force to, or attempt to, intentionally injure, intimidate or interfere with any person because that person is or has been providing reproductive health services. *See* 18 U.S.C. § 248(a)(1).[3] The statute was enacted in 1994 in response to increased incidents of violence and obstruction at abortion clinics. *See Cheffer v. Reno*, 55 F.3d 1517, 1519, n. 2 (11th Cir.1995) (citing to S.Rep. No. 117, 103 Cong.1st Sess. 3 (1993), where it was noted that from 1977 to 1993, there were over 1,000 reported acts of violence against providers of abortion services, including bombings, arson, death threats, assaults, kidnappings and murder); *United States v. Soderna*, 82 F.3d 1370 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 507, 136 L.Ed.2d 398 (1996).

▮ Now, for the first time, FACE is being invoked to penalize threats directed against a pro-life volunteer. Neither party questions the applicability of this statute to pro-life reproductive health service providers, *see* Def. Br. at 5, and the court finds no reason to do so. Defendant, instead, contends that plaintiff has not satisfied two elements under FACE; namely, plaintiff was not providing "reproductive health services" and defendant did not act with the requisite intent.

As to the former, defendant argues that Birthright, and hence plaintiff, does not provide "reproductive health services" because the services provided are not medical in nature but consist of merely guidance, counseling and referral services. Def.Br. at 5. The court disagrees. The statute covers

> reproductive health services provided in a hospital, clinic or physician's office, or other facility, and includes medical, surgical, *counselling or referral services* relating to

the human reproductive system, including services relating to pregnancy or the termination of a pregnancy.

18 U.S.C. § 248(e)(5) (emphasis added). The inclusion of nonmedical procedures within the definition of reproductive health services could not be clearer. Congress obviously recognized, as does this court, that a woman's reproductive health encompasses much more than access to a medical or surgical procedure. In addition, in finding that the statute is content-neutral with respect to a First Amendment analysis, courts have noted that FACE also applies to "facilities offering pregnant women counseling about alternatives to abortion." *American Life League, Inc. v. Reno*, 47 F.3d 642, 649 (4th Cir.), *cert. denied,* 516 U.S. 809, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995); *see also Terry v. Reno*, 101 F.3d 1412, 1419 (D.C.Cir.1996) (noting that FACE protects "facilities providing pre-pregnancy and pregnancy counseling services, as well as facilities counseling alternatives to abortion"), *cert. denied,* —— U.S. ——, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997); *Riely v. Reno*, 860 F.Supp. 693, 702 (D.Ariz. 1994) (noting that FACE "would apply to an individual who spray paints the words 'KEEP ABORTION LEGAL' on a facility providing counseling regarding abortion alternatives as well as to the individual who spray paints the words 'DEATH CAMP' on a facility providing abortion services").

But, continues defendant, even if reproductive health services include counseling and referral services, the statute was not intended to cover services provided by volunteers untrained in the field of counselling or reproductive care. Defendant argues that if FACE were not so interpreted, "a pregnant female's next door neighbor who states, 'I know a good pediatrician' would be providing 'reproductive health services.'" Def.Br. at 7. This court disagrees and, in any case, is not faced with such a situation. Plaintiff was a volunteer at an organization which provided, among other things, counseling services to

---

3. Section (a)(1) states in full that whoever by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate

such person or any other person or any class of persons from, obtaining or providing reproductive health services[ ] shall be subject to civil penalties. 18 U.S.C. § 248(a)(1).

pregnant women, referrals to medical and mental health professionals, free pregnancy tests, information on child development, and a twenty-four hour hotline for pregnant women who wished access to their services. Semsey Certification, at ¶ 4. Birthright's charter directly addresses its mission to provide assistance to pregnant women and offer alternatives to abortion. Charter, Exh. A annexed to Semsey Certification. Although each volunteer may not be a trained social worker or obstetric nurse, each is provided with a Birthright Resource Guide so that the volunteer can provide referrals to adoption and foster care agencies, medical facilities affording pre-natal care, day care providers, maternity homes, and Lamaze and exercise classes. Birthright Resource Manual, Exh. A annexed to Greenhut Certification. The situation before this court is a far cry from a simple recommendation by a neighbor to a friend.

In addition, nothing in the statute indicates that it covers only trained providers of reproductive services such as doctors, nurses, or social workers. Moreover, FACE has been construed to prohibit threats or violence against abortion clinic escorts, *United States v. Hill*, 893 F.Supp. 1034, 1039 (N.D.Fla. 1994), and maintenance workers at abortion clinics, *United States v. Dinwiddie*, 76 F.3d 913, 926–27 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 613, 136 L.Ed.2d 538 (1996), because they are integral parts of a business in which abortions are performed and pregnant women are counseled.

■ Defendant's second argument is that she did not have the requisite intent to impede, interfere with, or intimidate plaintiff from furnishing reproductive health services. Def.Br. at 10. In her brief, defendant states that she was drunk when she made the calls (*Id.*), did not even know plaintiff (*Id.* at 12), and she did not intend to impede plaintiff from rendering her services at Birthright but was referring to recent incidents by violent anti-abortion extremists (*Id.* at 11). This court is unpersuaded.

First, and taking the latter contentions first, it is inconsequential that, in leaving the messages, defendant intended to express outrage at recent incidents of violence by antia-

bortion extremists rather than preventing plaintiff from continuing her work at Birthright. Secondly, whether defendant knew plaintiff or not is of no importance. The statute prohibits threats of force which intimidate someone "because that person has been . . . providing reproductive health services." 18 U.S.C. § 248(a)(1). What is crucial is that plaintiff was targeted because she provided reproductive health services. The record clearly shows, and defendant does not dispute, that plaintiff was called because of her involvement with Birthright. *See* pp. 374, 375, *supra*.

In addition, the substance of the messages indicates that defendant was aware of plaintiff's affiliation with Birthright and was not simply making a random "crank" telephone call. Defendants messages were quite explicit: "Hello Janet. Get your murderers away from abortion clinics now or you will be killed" and "Janet get your pro-lifers away from our clinics or we will kill you." The record clearly shows that defendant intended to direct these threats at plaintiff because plaintiff "[had] been . . . providing reproductive health services." 18 U.S.C. § 248(a)(1).

Defendant's contention that she was drinking heavily the night of the phone calls, does not recall making them and, therefore, could not have "intended" to intimidate plaintiff with threats of force is similarly unavailing, although not for the reason advanced by plaintiff. Plaintiff argues that defendant is collaterally estopped from claiming that she lacked the requisite intent because she pleaded guilty to a violation of N.J.S.A. 2C:12–3b in a court of competent jurisdiction. Pl. Reply Br. at 9–11. N.J.S.A. 2C:12–3b states that

A person is guilty of a crime in the third degree if he threatens to kill another with purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

Pleading guilty, plaintiff contends, constitutes an admission of the elements of the charge and, therefore, defendant cannot now defend on the ground of voluntary intoxi-

cation. While it is true that the preclusive effect of guilty pleas upon subsequent civil cases has been accepted in many courts, *Bower v. O'Hara*, 759 F.2d 1117, 1129 (3d Cir.1985) (Sloviter, J., dissenting), this court has difficulty applying the doctrine of collateral estoppel in this case.

■ Generally, there are four requirements which must be met before collateral estoppel can be applied:

(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment.

*Haize v. Hanover Ins. Co.*, 536 F.2d 576, 579 (3d Cir.1976) (citing to 1B Moore's Federal Practice, ¶ 0.443 (1974)); *see also, Bower,* 759 F.2d at 1125. Some courts have replaced the "actual litigation" standard with an "incentive and opportunity" to litigate standard and have upheld the collateral estoppel effect of prior guilty pleas. *See Fontneau v. United States,* 654 F.2d 8, 10 (1st Cir.1981) (holding that guilty plea in a criminal tax proceeding collaterally estopped defendant in a subsequent civil tax proceeding from relitigating the issue of fraud); *United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978) (holding that defendant's guilty plea to a violation of the conflict of interest statute foreclosed him from denying his breach of fiduciary duty to the United States in subsequent civil proceedings); *Metros v. United States District Court,* 441 F.2d 313, 317–319 (10th Cir.1970) (finding that guilty plea precluded defendant from disputing probable cause for issuance of search warrant in subsequent action by arrestee for money damages under Civil Rights Act).

■ Whether guilty pleas are entitled to preclusive effect is, under the law of the Third Circuit, less than clear. Having never spoken definitively on the issue, the Court of Appeals seems to be leaning in the direction of the "actually litigated" standard. In *Bower,* the Third Circuit found that in a subsequent civil action, the defendant could produce evidence that he had acted in self-defense because the issue had not been "ac-

tually litigated" when he previously entered a guilty plea to the criminal charge of assault and battery. *Bower,* 759 F.2d at 1126; *Anela v. City of Wildwood,* 790 F.2d 1063, 1068–69 (3d Cir.) (citing to *Bower* with approval), *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986). The Court of Appeals noted that the doctrine of issue preclusion was designed to prevent unnecessary relitigation of issues actually litigated and determined. *Bower,* 759 F.2d at 1125 (citing to Shapiro, Should a Guilty Plea Have Preclusive Effect?, 70 Iowa L.Rev. 27, 28–29 (1984)). Therefore, a guilty plea which has never been the subject of an "adversary contest leading to a judicial determination" should not be accorded total preclusive effect. *Id.* While the guilty plea may be considered as evidence against the defendant in later proceedings, defendant should still have the opportunity to contest facts concerning the elements of the offense or possible defenses. *Id.* at 1126.

Although *Bower* is not technically binding upon this court because the Circuit was interpreting Virgin Islands law (the Restatement), this court finds that the facts of this case make it difficult to foreclose defendant from claiming a defense of voluntary intoxication. The record reflects the following discussion when defendant entered her plea of guilty:

.     .     .     .     .

THE DEFENDANT: I said, I don't remember making it, but it's on the phone bill, so I must have, which means I did.

THE COURT: Well, were you taking any kind of drugs or medication at the time?

MR. DALY [defendant's attorney]: Judge, if I may.

THE COURT: Go ahead.

MR. DALY: Were you drinking that night Ms. Hand?

THE DEFENDANT: Yes.

MR. DALY: Okay. And you and I have discussed the defense of intoxication, that it might be available in this case, is that correct?

THE DEFENDANT: Yes.

MR. DALY: Now, the statement that I referred to, does it sound like statements that you had made in connection with another matter that same evening?

. . . . .

The plea calloquy indicates that while defendant pleaded guilty, the court accepted the plea without deciding or even exploring the issue of whether the requisite intent was negated by a defense of voluntary intoxication. Courts, including this court, are reluctant to attach collateral estoppel effect to matters not directly at issue and specifically determined. *De Cavalcante v. Commissioner of Internal Revenue*, 620 F.2d 23, 28 n. 10 (3d Cir.1980). *See also General Development Corp. v. Binstein*, 743 F.Supp. 1115, 1133 (D.N.J.1990) (citing to *Bower* and refusing to attach collateral estoppel to prior guilty plea in part because the matter had not been "actually decided").

■ Having said this, however, defendant's argument still fails because voluntary intoxication is not a defense to a violation of FACE. Because that defense has never been raised to this relatively new statute, however, this court will analogize to another federal statute prohibiting threats. Section 871 of Title 18 essentially prohibits anyone from "knowingly and willfully" threatening the President or Vice–President of the United States through the mails. 18 U.S.C. § 871(a).[4] Likewise, FACE prohibits threats made to "intentionally" injure or intimidate providers of reproductive health care. 18 U.S.C. § 248(a)(1). Section 871 requires only general intent because "it is the making of the threat that is prohibited without regard to the maker's subjective intention to carry out the threat." *United States v. Manning*, 923 F.2d 83, 85–86 (8th Cir.), *cert. denied*, 501 U.S. 1234, 111 S.Ct. 2860, 115 L.Ed.2d 1027 (1991); *United States v. Johnson*, 14 F.3d 766, 768–69 (2d Cir.) (excluding evidence of diminished capacity because threatening the President is a general and not specific intent crime), *cert. denied*, 512

U.S. 1240, 114 S.Ct. 2751, 129 L.Ed.2d 868 (1994). In the same way, FACE requires only general intent because threats in the context of FACE are to be evaluated in terms of their impact on the recipient, not the specific intent of their maker. *Dinwiddie*, 76 F.3d at 925.

Therefore, defendant's claim that because she was intoxicated she could not have had the requisite intent to threaten plaintiff is without merit. It is well settled that voluntary intoxication is not a defense under a statute requiring only general intent. *United States v. Williams*, 892 F.2d 296, 303 (3d Cir.), *cert, denied*, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); *United States v. Bennett*, 975 F.2d 305, 308 (6th Cir.1992); *United States v. Lewis*, 780 F.2d 1140, 1143 (4th Cir.1986); *United States v. Fay*, 668 F.2d 375, 377 (8th Cir.1981). Here, defendant did not inadvertently call a reproductive health care worker when making a "crank" call or speak disparagingly about Birthright for all to hear, but intentionally targeted plaintiff because of her affiliation with Birthright and relayed statements which plaintiff could reasonably find to be threatening. *Dinwiddie*, 76 F.3d at 925 (noting that "true threats" under FACE are to be judged by whether the recipient could reasonably conclude that the threat expresses an intent to injure now or in the future). The fact that defendant may have been intoxicated and/or never intended to carry out the threats does not negate the requisite intent. *See, e.g., United States v. Kosma*, 951 F.2d 549, 557 (3d Cir.1991) (holding that statute prohibiting threats against the President (§ 871) only requires general intent to make the threat and not specific intent to carry out the threat).

■ Finally, this court dismisses out of hand defendant's last argument that because she is remorseful and has already been criminally prosecuted for the offense, civil liability would be "overkill." Def.Br. at 12. The statute permits civil as well as criminal sanc-

---

4. This court recognizes that § 871 is a criminal statute and plaintiff is bringing a civil action under FACE. The analogy is still appropriate, however, because FACE first outlines the prohibited behavior and then provides for both criminal

and civil sanctions. There is no indication in the statute that the elements of the prohibited activity are to be interpreted any differently when imposing civil as opposed to criminal sanctions.

tions to be imposed if it is violated. 18 U.S.C. § 248(b), (c).

Therefore, this court will grant plaintiff's motion for summary judgment on Counts One and Two of the complaint and will award statutory damages in the amount of $10,000 ($5,000 per violation). On the court's own motion, Counts Three and Four will be dismissed. Within thirty days of this date, plaintiff shall advise the court whether she will be pressing her claim for punitive damages and/or Count Five. An appropriate order shall issue.

### ORDER

This matter having come before the court on plaintiff's motion for summary judgment on Counts One and Two of her complaint; and the court having reviewed the submissions of the parties without oral argument pursuant to Fed.R.Civ.P. 78; and consistent with this court's opinion of even date;

IT IS on this 24th day of February, 1998

ORDERED that plaintiff's motion for summary judgment as to Counts One and Two of her complaint be and hereby is granted; and it is further

ORDERED that plaintiff be and hereby is awarded $10,000 in statutory damages under 18 U.S.C. § 248(c)(1)(B); and it is further

ORDERED that, on the court's own motion, Counts Three and Four will be dismissed.